GANOBCIK, Executor, Appellant,

v.

INDUSTRIAL FIRST, INC. et al., Appellees.

[Cite as *Ganobcik v. Industrial First, Inc.* (1991), 72 Ohio App.3d 619.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58009.

Decided Feb. 25, 1991.

620

*Colella, Trigilio & Stephenson, Mark E. Stephenson* and *Timothy S. Trigilio*, for appellant.

*Reminger & Reminger Co., L.P.A.*, and *Nicholas D. Satullo; Quandt, Giffels, Buck & Rodgers Co., L.P.A.*, and *Robert Quandt*, for appellees.

JOHN F. CORRIGAN, Presiding Judge.

Plaintiff John Ganobcik, Executor of the Estate of Joseph Santucci, appeals from the disposition of his wrongful death action against defendants Regional Transit Authority (hereafter referred to as "R.T.A.") and Industrial First, Inc. (hereafter referred to as "Industrial First"). Ganobcik challenges the judgment of the trial court which directed a verdict in favor of R.T.A., and challenges a second judgment entered in accordance with a jury verdict rendered for Industrial First. For the reasons set forth below, we affirm both judgments.

## I

On October 15, 1985, Joseph Santucci (hereafter referred to as "the decedent"), an ironworker employed by Industrial First, fell while working on a construction project which involved the extension of State Route 237 over R.T.A. train tracks. Santucci died a short time after the fall, and on January 13, 1986 plaintiff commenced this action against R.T.A. and Industrial First.

In his claim against R.T.A., plaintiff asserted that R.T.A. had actually participated in the construction project, and was therefore required to provide the decedent with safe working conditions pursuant to R.C. 4101.11 and 4101.12. Plaintiff further asserted that R.T.A. had violated this duty and proximately caused the decedent's death. In his claim against Industrial First, plaintiff alleged that Industrial First had intentionally caused the decedent's death by requiring him to work under dangerous conditions which would harm or injure him to a substantial certainty. Both defendants submitted answers in which they denied liability, and the cause proceeded to a jury trial on May 31, 1989.

The evidence adduced at trial indicated that Industrial First was a subcontractor on the Route 237 extension project, and that the project was being completed for the Ohio Department of Transportation (hereafter referred to as "O.D.O.T."). As part of this project involved construction of a ramp over R.T.A. tracks, "special clauses" were included within the proposal for the project which provided in relevant part as follows:

"The bidder, if awarded the contract for this improvement agrees:

"1.  To cooperate at all times with the local officials of * * * [R.T.A.].

"2.  To use all reasonable care and diligence in the work in order to avoid accidents, damage or unnecessary delay to, or interference with the trains and other property of * * * [R.T.A.].

"3.  To conduct his work in a manner satisfactory to the chief engineer of * * * [R.T.A.] or his authorized representative, to perform his work in such manner and at such time as not to unnecessarily interfere with the movements of trains or railroad traffic, and to hold his work at all times open to inspection of railroad company inspectors.

"4.  To cooperate with public utility, railroad or other organizations having occasion to do work on and in connection with the improvement.

" * * *

"11.  Methods and procedures for performing work on property of The Greater Cleveland Regional Transit Authority must be approved by Mr. N. Bert Stone, Supervisor of Engineering, The Greater Cleveland Regional Transit Authority, 1404 East Ninth Street, Cleveland, Ohio 44114."

The evidence further revealed that O.D.O.T. permitted R.T.A. to review the plans for the ramp, and also allowed R.T.A. to restrict construction over its tracks to between 1:15 a.m. and 3:45 a.m., when the tracks were not in use. Industrial First had pre-planned the construction job without knowledge of this time restriction, however.

Evidence going to the events immediately surrounding the decedent's fall revealed that during the early morning construction period of October 15, 1985, the decedent and Donald Meness were working approximately thirty-one feet above the train tracks on wooden planks placed between two girders. The men were installing cross-bracing between the two girders, and were using flashlights to supplement a beacon and two light stands below. Neither man had secured his safety belt, and no safety netting was provided.

The evidence established that it had rained throughout the early morning hours of the day, and the men stopped their work for an undetermined time. The rain then stopped and the men resumed installing the cross-bracing. The decedent fell at approximately 4:00 a.m. as the two men were attempting to align the cross-bracing to one of the girders using a jack and a 4" × 4" piece of wood. The precise cause of the decedent's fall was undetermined. While the parties disputed precisely how much time had elapsed before the men resumed work, National Weather Service records indicated that rain showers were observed at approximately 3:52 a.m., or approximately eight minutes before the decedent fell.

The parties also presented conflicting evidence as to whether the men voluntarily resumed work on the cross-bracing or were ordered to do so by their foreman Frank Kruczek. Conflicting evidence was likewise presented as to the nature of the work being performed, as plaintiffs contended that the decedent was performing "detailing work," during which Industrial First should have ensured that his safety belt was secured to a lanyard. Industrial First asserted that the decedent was performing "connecting" work, however, and that the use of safety lines was therefore optional. Finally, the parties presented conflicting evidence as to whether a safety net could have been provided and whether the work could have been completed with a catenary safety system.

The evidence further disclosed that as a result of Santucci's death, Industrial First was cited by the Occupational Safety and Health Administration (hereafter referred to as "OSHA") for failing to provide fall protection. The trial court also permitted inquiry into past instances when Industrial First had been cited by OSHA for failing to provide fall protection, but it barred introduction of the documents pertaining to five of these prior citations. The court likewise barred testimony and documentary evidence pertaining to the Ohio Division of Safety and Hygiene's compilation of statistics regarding claims filed by Industrial First employees for falls sustained from 1979 to 1985.

Finally, as it pertained to defendant R.T.A., the evidence established that ironworking is an inherently dangerous activity, that R.T.A. kept a flagman stationed at the construction site, and that it maintained the time limits for construction at the time of the decedent's fall.

At the close of the evidence, the trial court directed a verdict in favor of R.T.A. and submitted plaintiff's claim against Industrial First to the jury. Thereafter, the jury returned a defense verdict, finding in special interrogatories that Industrial First had knowledge of a danger within its business operation, but that Industrial First did not know to a substantial certainty that the decedent would sustain harm if exposed to this danger.

Plaintiff now appeals.

## II

"The trial court erred by allowing counsel for appellee Industrial First to intimate and disclose to the jury that workers' compensation benefits were paid on behalf of the plaintiff's decedent."

In his first assignment of error, plaintiff-appellant contends that Industrial First was erroneously permitted to inform the jury that the decedent's estate

had received workers' compensation benefits, as counsel for Industrial First stated, over objection, as follows:

"It doesn't matter who was at fault for this accident. He was our employee. We are morally, ethically bound to do certain things for our employees when they're injured on the job. We have done it.

"Ladies, the question here is whether we should do more—

"MR. STEPHENSON: Objection, Your Honor.

"THE COURT: Overruled—

"MR. FARRALL: —and if you find that Frank Kruczek, our foreman, was guilty of intentionally causing Mr. Santucci's death, then you must do more. You must award damages.

"If you find that he was not guilty of that intentional act, then you must not award—you must not award damages.

"* * * *

"Well, in order for them to recover, you have got to find that the injury was outside the scope and course of his employment, because it is so grievous, because it is so wrong that nobody in their right mind would think that would ever happen to them in their employment. Because, remember, this is outside Workers' Compensation, which is the law which governs most disputes between employees and employers."

██ Under the collateral source rule, as it pertains to this action,[1] benefits received by an injured party from a source wholly independent of the wrongdoer, such as workers' compensation, are not deductible from the amount of damages which the injured party might otherwise recover from the wrongdoer. *Jarrell v. Woodland Mfg. Co.* (1982), 7 Ohio App.3d 320, 323, 7 OBR 416, 419–420, 455 N.E.2d 1015, 1018–1019; *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 107, 52 O.O.2d 395, 396–397, 263 N.E.2d 235, 237–238. That is, the receipt of collateral benefits is irrelevant and immaterial to the issue of damages, and concomitantly, the receipt of such benefits is not to be admitted into evidence or otherwise disclosed to the jury. *Id.* at 109, 52 O.O.2d at 397, 263 N.E.2d at 239. Error resulting from disclosure of collateral benefits will not be recognized, however, unless the record affirmatively shows that the error was prejudicial. Cf. *Suchy v. Moore* (1972), 29 Ohio St.2d 99, 102, 58 O.O.2d 194, 196, 279 N.E.2d 878, 880.

---

1. As this action was commenced before January 5, 1988, and is based upon a claim for relief which arose prior to January 5, 1988, it is not subject to R.C. 2317.45 which permits disclosure of the plaintiff's receipt of collateral benefits, including workers' compensation, after entitlement to damages has been determined.

■ In this instance, Industrial First disclosed that it had done "certain things" following the fall, and that the jury would have to determine if the matter came within the scope of the workers' compensation system. Industrial First did not disclose that benefits were in fact received and did not disclose the amount of any such benefits. Accordingly, we find that Industrial First's comments did not improperly divulge collateral benefit information. We further conclude that the record does not affirmatively demonstrate that these remarks prejudiced the plaintiff.

Plaintiff's first assignment of error is overruled.

### III

"The trial court erred in allowing argument and testimony that the plaintiff-appellant was obligated to show that the defendant-appellee Industrial First, Inc. specifically intended Joseph Santucci's death."

■ In his second assignment of error, plaintiff asserts that the trial court erred in permitting Industrial First to argue that it did not intentionally harm the decedent and to elicit testimony to the same effect, because plaintiff claims, this caused the jury to conclude that plaintiff was required to prove that Industrial First specifically intended to harm the decedent in order to establish his claim. This contention lacks merit.

In *Blankenship v. Cincinnati Milacron Chemicals* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, syllabus, the Supreme Court established an exception to the exclusivity of the workers' compensation system by recognizing a common-law right of action of an employee against his employer for intentional torts. In *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 94–95, 15 OBR 246, 250, 472 N.E.2d 1046, 1051, the court further explained the nature of this cause of action as follows:

" 'The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way the law forbids. * * *' Prosser & Keeton, Law of Torts (5 Ed.1984) 36, Section 8. However, 'intent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow what the actor does * * *' * * *

"Thus, a specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is *substantially certain*, not merely likely, to occur. It is this element of substantial certainty which distinguishes a merely negligent act from

intentionally tortious conduct. Where a defendant acts despite his knowledge that the risk is appreciable, his conduct is negligent. Where the risk is great, his actions may be characterized as reckless or wanton, but not intentional. The actor must know or believe that harm is a substantially certain consequence of his act before intent to injure will be inferred. The existence of this knowledge or intent on the part of the actor may be inferred from his conduct and surrounding circumstances. *Davis v. Tunison* (1959), 168 Ohio St. 471 [7 O.O.2d 296, 155 N.E.2d 904], paragraph two of the syllabus.

"Thus, an intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur. See 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A. * * * "

Later, in *Van Fossen v. Babcock & Wilcox Co.* (1986), 36 Ohio St.3d 100, 116, 522 N.E.2d 489, 503–504, the court explained its previous holdings in *Blankenship* and *Jones,* and stated that an intentional tort may be established where the wrongdoer desired to bring about the harm inflicted or when the wrongdoer's conduct met a certain "risk exposure" level. Accord *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 126, 522 N.E.2d 511, 513–514 ("the record here does not contain even the suggestion that appellant's foreman intended to injure appellee or that appellee's superior placed him in a deadly or extremely dangerous working environment with the foreknowledge that he would be killed or injured").

From the foregoing, it is clear that an intentional tort may be established where the actor desired to bring about the employee's injury or exposed him to a certain risk. Thus, Industrial First could properly argue that it did not desire to cause the decedent's death in order to foreclose recovery under that intentional tort theory. Moreover, there is simply no basis in the record for concluding that this argument gave the jury the erroneous notion that the plaintiff could not recover if Industrial First did not desire to cause the harm sustained, as plaintiff's closing argument and the special interrogatories clearly demonstrate that the plaintiff was proceeding on the "risk exposure" intentional tort theory.

Accordingly, plaintiff's second assignment of error is overruled.

## IV

"The trial court erred in its instructions to the jury in stating that they were to decide whether Industrial First intentionally caused the injury and death of Joseph Santucci."

In his third assignment of error, plaintiff suggests that the following portion of the trial court's instructions erroneously informed the jury that it

was required to find that Industrial First "specifically intended" to cause the decedent's death in order to recover:

"The issues you are to decide on this claim is whether Industrial First intentionally caused the injury and death of Joseph Santucci.

"In order to find that Industrial First intentionally caused the death of Joseph Santucci, you must understand the definition of 'intent[.]' " [Quoting *Van Fossen v. Babcock & Wilcox Co., supra.*]

The record discloses that the trial court at no time used the term "specific intent" in its charge. To the contrary, at plaintiff's counsel's urging, the court informed the jury that "specific intent to injure is not required." Accordingly, plaintiff's third assignment of error has no basis in the record and is therefore overruled. Cf. *L.A. & D., Inc. v. Lake Cty. Bd. of Commrs.* (1981), 67 Ohio St.2d 384, 388, 21 O.O.3d 242, 244, 423 N.E.2d 1109, 1112.

## V

"The trial court committed reversible and prejudicial error in responding to the jury's question as to the definition of substantially certain by stating that substantially certain equals inferred intent.

"The trial court erred in overruling the appellant's motion for a new trial."

█ In his fourth assignment of error, plaintiff asserts that the trial court erred in instructing the jury, in response to a question which arose during deliberations, that "substantial certainty" means "inferred intent." In his seventh assignment of error, plaintiff argues that the trial court erred in overruling a motion for a new trial which was premised upon the court's use of this instruction.

As this court noted previously, the Supreme Court in *Jones v. VIP Development Co., supra,* held that an intentional tort is an act committed with the intent to injure or committed with the belief that such injury is substantially certain to occur. *Id.,* 15 Ohio St.3d at 90, 15 OBR at 246, 472 N.E.2d at 1047, paragraph three of the syllabus. Later, in *Van Fossen v. Babcock & Wilcox Co., supra,* the court focused upon language that an intentional tort did not require specific intent to injure, but only that "the actor proceeds despite a perceived threat of harm to others which is substantially certain, not merely likely, to occur."

The court stated:

"*Jones* applied the Restatement of Torts 2d, and stated: 'It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. Where a defendant acts despite his knowledge that the risk is appreciable, his conduct is negligent. Where the risk is great,

his actions may be characterized as reckless or wanton, but not intentional. The actor must know or believe that harm is a substantially certain consequence of his act before intent to injure will be inferred.' * * *
" * * *

" * * * the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.*, 36 Ohio St.3d at 116–117, 522 N.E.2d at 504.

Applying the foregoing, we conclude that "substantial certainty" can fairly be interpreted as "inferred intent." Moreover, any error in so instructing the jury clearly inured to the benefit of plaintiff as it eliminated the need for proof under all three prongs of the *Van Fossen* test. Accordingly, we conclude that plaintiff's fourth assignment of error lacks merit. Further, as there was no error of law in the court's instruction, the court was not required to grant plaintiff a new trial pursuant to Civ.R. 59(A). Cf. *Sanders v. Mt. Sinai Hospital* (1985), 21 Ohio App.3d 249, 252, 21 OBR 292, 296, 487 N.E.2d 588, 592, and plaintiff's seventh assignment of error is therefore likewise well taken.

## VI

"The trial court erred to the prejudice of the appellant in excluding the U.S. Department of Labor records reflecting that the appellee Industrial First had been cited eight times under the Occupational Safety and Health Act of failing to provide and require the use of fall protection by its employees prior to October 15, 1985."

In his fifth assignment of error, plaintiff claims that the trial court erred in excluding evidence regarding five prior instances where Industrial First had been cited by OSHA for failing to provide fall protection.

■ Evidence having any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence is relevant and therefore admissible. Evid.R. 401 and 402. It is within the sound discretion of the trial court to decide what evidence is relevant and will assist the trier of fact in determining a fact in issue. *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444; *Owens v. Bell* (1983), 6 Ohio St.3d 46, 6 OBR 65, 451 N.E.2d 241.

We find no abuse of discretion in this instance as the five proffered citations were not shown to have factual similarity to this matter, and therefore were not demonstrated to have probative value. That is, the July 1979 and June 1982 citations for failure to provide personal safety equipment do not indicate the height at which the work was being performed and do not indicate the

type of work being performed. The November 1983 and December 1984 citations resulted from improper scaffolding, and the October 1985 citation resulted from improper protection during roof stripping and installation.

In accordance with the foregoing, we conclude that the trial court properly excluded the proffered citations for lack of demonstrated probative value. Thus, the trial court did not abuse its discretion in connection with these citations.

## VII

"The trial court erred to the prejudice of the plaintiff-appellant in disallowing the testimony of Sandy Newman, and the use of records from the Division of Safety and Hygiene for the state of Ohio reflecting that from 1979 through 1985 there were 23 claims filed by employees of Industrial First for workers' compensation benefits for falls from a different level, and that in 13 of those claims, employees sustained disabling injuries of 7 days or more."

█ In his sixth assignment of error, plaintiff argues that the trial court erred in excluding evidence regarding claims of Industrial First employees, filed with the Ohio Division of Safety and Hygiene, for falls sustained at various work sites from 1979 to 1985.

As the proffered evidence consisted merely of statistical summaries regarding "falls" from "different levels" with no explanation of the circumstances surrounding the fall, and was not presented in relation to the total number of Industrial First employees or total number of falls from which claims did not result, the relevance of this evidence was not made manifest below. Accordingly, we conclude that the trial court did not abuse its discretion in excluding this evidence.

Plaintiff's sixth assignment of error is overruled.

## VIII

"The trial court abused its discretion and committed reversible error in granting the motion for a directed verdict on behalf of the appellee R.T.A."

In his eighth assignment of error, plaintiff asserts that the trial court erred in directing a verdict for R.T.A., because he claims reasonable minds could reach divergent conclusions as to whether R.T.A. was liable for the peril created, pursuant to the "frequenters statute," R.C. 4101.01 *et seq.* In response, R.T.A. asserts that the statutes are inapplicable because it did not retain custody and control of the area and it did not actually participate in the job operation.

With respect to procedure, we note that a motion for a directed verdict which is based upon the evidence presented is governed by Civ.R. 50(A), which provides as follows:

"(4) *When granted on the evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." See, also, *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899–900.

Pursuant to this rule, a trial court must direct a verdict in favor of the defendant where there is no evidence tending to prove an essential element of the plaintiff's cause of action. *Rayburn v. J.C. Penney Outlet Store* (1982), 3 Ohio App.3d 463, 465, 3 OBR 544, 546–547, 445 N.E.2d 1167, 1169–1170; *Epling v. Express Co.* (1977), 55 Ohio App.2d 59, 61, 9 O.O.3d 220, 221–222, 379 N.E.2d 239, 241.

With respect to the duties which are owed to frequenters, we note that R.C. 4101.11 provides as follows:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

R.C. 4101.12 further provides:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

The relevant definitions are in turn set forth in R.C. 4101.01 as follows:

"(C) 'Employer' means every person, firm, corporation, agent, manager, representative, or other person having control or custody of any employment, place of employment, or employee.

"(D) 'Employee' means every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go, or work or be at any time in any place of employment.

"(E) 'Frequenter' means every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."

■ Thus, the duties contemplated in the frequenters statutes do not apply unless one is in custody and control of the premises. Cf. *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 208, 6 OBR 259, 260–261, 452 N.E.2d 326, 329.

Where there is requisite custody and control, the statutory duty does not extend to hazards which are inherently and necessarily present because of the nature of the work performed. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165, at syllabus, unless the defendant "actually participated in the job operation performed by the crew of the independent contractor." *Hirschbach v. Cincinnati Gas & Elec. Co., supra.* For " 'the existence of hazards which could have been eliminated by the exercise of ordinary care by those in custody or control of the premises cannot be considered as inherent hazards necessarily present because of the character of the work to be done.' " *Id.,* citing *Parsons v. Blount Bros. Constr. Co.* (C.A.6, 1960), 281 F.2d 414, 417. Finally, actual participation will be found when one dictates the manner and mode in which the job is to be performed. *Id.,* 6 Ohio St.3d at 208, 6 OBR at 260–261, 452 N.E.2d at 329.

■ In this case, plaintiff presented no evidence that R.T.A. was in custody or control of the work area. Rather, the undisputed evidence indicated that O.D.O.T. had custody and control of the ramp and the entire project, and that the ramp was merely above R.T.A. tracks at that particular point where the decedent fell. The undisputed evidence further indicated that R.T.A. had no authority to stop the project.

In addition assuming the duty owed to frequenters was applicable to R.T.A., we note that the parties agreed that the job was inherently dangerous. Thus, as to the issue of R.T.A.'s actual participation in the job operation, the evidence revealed that while R.T.A. was given a contractual right to control the manner and mode of construction, it was in fact wholly uninvolved in dictating the processes and procedures employed. That is, the evidence

demonstrated merely that R.T.A. kept a flagman at the job site, and limited the times of job performance, and neither of these facts may fairly be considered as restrictions on manner and mode. Further, the "special clauses" make reference to manner and time restrictions which further indicates that these are separate concepts.

Construing this evidence most strongly in favor of plaintiff, the non-moving party, reasonable minds could only conclude that R.T.A. did not owe the decedent the duties set forth on the frequenters statute, and, even if such duties were applicable, did not actually participate in the inherently dangerous job operation. Thus, in light of the failure of proof going to these essential elements of plaintiff's cause of action against R.T.A., the trial court properly granted R.T.A.'s motion for a directed verdict.

Plaintiff's eighth assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PATTON and PRYATEL, JJ., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.