JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Josa Robinson, appeals the trial court's granting of summary judgment for defendant Leach Construction Company ("Leach") and defendants Jeremy Falkowski[1] and Aspen Building Corporation (Aspen). Plaintiff, who had worked for the owner of Colonnade Apartments for three years, had worked as property manager of Colonnade Apartments for three weeks when she fell in the building and injured herself. The building was undergoing renovation at the time of her fall and had no tenants. Because it was under construction, contractors and subcontractors from various companies were on the site working on plumbing, electricity, carpentry, carpet installation and drywall installation. Leach was the general contractor on the project and Aspen was the drywall subcontractor.
 {¶ 2} Walking fast to the entrance, plaintiff tried to enter the building during a torrential rainstorm between 7:30 and 8:00 AM on August 10, 1998. The morning was dark as a result of the storm. Because the wind was too strong, plaintiff could not open the door.
 {¶ 3} In her deposition plaintiff said she was carrying a briefcase and an umbrella, which she put down. The foreman who helped her up said she was also carrying a box he described as "a double armload" and "a foot and a half or so by a foot and a half". Plaintiff described it as half the size of an object in the court room which object her counsel estimated to be 2½ feet by 18 inches.
 {¶ 4} The door was propped partway open by a fifty-pound box of drywall "mud." The box was one foot square. It had been used as a door stop in that entrance since plaintiff had started working in the building three weeks earlier. The foreman for Aspen, the drywall contractor, testified that it is common practice on construction sites to use a box of this "mud" as a doorstop. Previously, the box had propped the door fully open. On this day, however, the wind and rain had pushed the door and the box. Thus the opening was smaller. Nevertheless, plaintiff believed the opening was large enough to enter through, but she had to step over the box to do so. There was an awning over the door, but, because the door had been propped open and it was raining and blowing quite hard, the floor inside the entrance was wet and slippery. Additionally, the cardboard box holding the mud had broken from the wetness and opened.[2]
 {¶ 5} After plaintiff stepped over the box, she slipped "on the tail end of the box, and the wet floor." Depo. 32. The Aspen foreman who helped her get up said he retrieved the papers and box which she had been carrying. Plaintiff proceeded to her office and finished working that day but has not worked since because of her injuries.
 {¶ 6} Plaintiff sued the general contractor, Leach Construction, as well as the drywall subcontractor, Jeremy Falkowski, "d.b.a. Aspen" and his company, Aspen Building Corp. She alleged that "her injuries were caused by the negligence of each or both Defendants in allowing conditions to exist which led to her fall and/or the Defendant's failure to warn her of a dangerous condition." Complaint ¶ 6. The defendants cross-claimed against each other for indemnification.
 {¶ 7} Both defendants moved for summary judgment. The court granted summary judgment to Aspen on April 20, 2001 and to Leach on October 24, 2001. Plaintiff timely appealed, stating two assignments of error. Because the second assignment of error is dispositive of the case, we will address it first.
 {¶ 8} "II. The court erred in granting summary judgment on the basis that appellees owed no duty of care to the appellant."
 {¶ 9} When reviewing a trial court's grant of summary judgment, the appellate court addresses the case de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. The appellate court will find that summary judgment is proper if, after construing the evidence in favor of the party opposing the motion, the court finds, first, there is no genuine issue of material fact, second, the moving party is entitled to judgment as a matter of law, and, third, reasonable minds can come to but one conclusion, which is adverse to the opposing party. Zivich v. MentorSoccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370 (citation omitted.)
 {¶ 10} On a negligence claim, if a plaintiff is to avoid summary judgment, the plaintiff must provide evidence establishing a genuine issue of material fact by showing that, first, the defendant owed a duty of care, second, that the defendant breached this duty, and, finally, that this breach was the proximate cause of the injury which caused plaintiff's damage. Texler v. D.O. Summers (1998), 81 Ohio St.3d 677,680. See also, Menifee v. Ohio Welding Prod., Inc. (1984),15 Ohio St.3d 75.
 {¶ 11} "The existence of a duty * * * is a question of law, not fact." Schindler v. Gales Superior Supermarket (2001), 142 Ohio App.3d 146,153, citing Mussivand v. David (1989), 45 Ohio St.3d at 318. It is proper, therefore, for the trial court to make the determination of whether defendants owed a duty to plaintiff.
 {¶ 12} If defendants in the case at bar did not owe a duty to plaintiff, then her cause of action fails. Plaintiff claims that defendants owed her a duty of care because she qualifies as a "frequenter" under R.C. 4101.11.
 {¶ 13} The relevant definitions are set forth in R.C. 4101.01:
 {¶ 14} "(C) `Employer' means every person, firm, corporation, agent, manager, representative, or other person having control orcustody of any employment, place of employment, or employee." Emphasis added.
 {¶ 15} "(E) `Frequenter' means every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."
 {¶ 16} "* * * [T]he duties contemplated in the frequenters statutes do not apply unless one is in custody and control of the premises. Cf. Hirschbach v. Cincinnati Gas Elec. Co. (1983),6 Ohio St.3d 206, 208, 6 OBR 259, 260-261, 452 N.E.2d 326, 329." Ganobcikv. Industrial First, Inc. (1991), 72 Ohio App.3d 619, 632.
 {¶ 17} Despite plaintiff's assertions that defendants were in control of the premises, it is clear the subcontractor Aspen, who was present to do drywall only, was not in control of the whole building. Aspen's foreman on the job, Collin Widmar, testified that he did not know what electricians, carpenters, or plumbers were working on the premises, because he tracked the activities only of his own crew.
 {¶ 18} Aspen can be held responsible for the actions only of its own crew. Aspen's foreman testified that he did not know who put the box in the door and stated that an employee of any one of the other sub-contractors working on the site could have put it there, because the box was stored near that entrance and using a mud box as a door stop is common practice in construction. He also testified that none of his employees was working in that part of the building on the day in question. Because plaintiff failed to present any evidence that Aspen had any responsibility for the presence of the box in the door or control over the premises, it had no duty to protect her from the wet box and cannot be responsible for her fall and subsequent injuries.
 {¶ 19} Leach, on the other hand, was the general contractor overseeing the renovation project. The company denies, however, it was in control of the premises. Leach states that none of its employees had been working on the site for over a week and was not aware of, much less had authorized, the wet box in the doorway. In a similar case, the Ohio Supreme Court noted in Comerford v. Jones Laughlin Steel Corp.
(1959), 170 Ohio St. 117, 122, "we have no evidence to indicate that plaintiff was working in a place of employment which was under the custody and control of [defendant general contractor] within the meaning of the definition in Section 4101.01." Similarly here, we have no evidence supporting plaintiff's assertion that Leach had full control over the premises.
 {¶ 20} The body of case law addressing the duties of general contractors to frequenters of a work site almost exclusively addresses injuries to employees of subcontractors of the general contractor. In those cases, the courts have held that unless the general contractor actively participates in the activity which causes the injury, it cannot be held responsible for the injury. Further, a "general contractor's retention of the authority to monitor and coordinate the activities of subcontractors and the retention of control over safety policies and procedures do not rise to the level of active participation, thereby extending a duty of care from a general contractor to a subcontractor's employees." Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, 337, citation omitted.
 {¶ 21} In the case at bar there is no evidence that Leach participated in the activity which caused the injury. Plaintiff's case fails, therefore, because she has failed to show that either defendant had control or custody of the premises and thus was responsible to her as a frequenter as defined in the statute.
 {¶ 22} Further, even if defendant Leach controlled the premises, because it had no knowledge of any hazard presented by the broken box, Leach owed no duty to warn plaintiff of the danger the box or the wet floor presented. The Eichner court, supra, stated that "[t]he duty owed to frequenters, requir[es] that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which [the occupier]has knowledge." Emphasis added. Eicher v. U.S. Steel Corp. (1987),32 Ohio St.3d 248, 249. The rainstorm which caused the box to break was a summer storm which plaintiff had noted upon waking. Because there is no evidence that it had been raining the previous workday, there is no evidence that Leach could have been aware of the wet box prior to that morning.
 {¶ 23} There is no evidence that anyone else entered the building by that entrance. Aspen's foreman testified that he used a different entrance that morning. There is also no evidence that anyone from Leach was even on the site that morning, much less saw the box. In fact, there is no evidence that anyone other than plaintiff was aware that the box in the door presented any hazard at all until she fell. A door propped open is not an inherently dangerous condition, and Leach had no control over the rain and wind which caused the puddle of water inside the door and caused the box to collapse. Finally, no one knows how long the box was there.
 {¶ 24} "`To prevail in a case where the plaintiff has allegedly slipped on a foreign substance on the floor of the defendant's premises, the plaintiff bears the burden of showing: (1) that the defendant through its officers or employees was responsible for the hazard complained of; or (2) that at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or (3) that such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or to remove it was attributable to a want of ordinary care.' * * * A plaintiff may establish constructive notice of a substance on a floor with evidence of the length of time the substance had been on the floor."Johnston v. Miamisburg Animal Hosp., Montgomery App. No. 18863, 2001-Ohio-1467, at 7, quoting Jones v. Sears, Roebuck Co., Inc., 1994 Ohio App. LEXIS 4687 (Oct. 19, 1994), Montgomery App. No. 14528, and citing Combs v. First Natl. Supermarkets, Inc. (1995), 105 Ohio App.3d 27,30, 663 N.E.2d 669.
 {¶ 25} Plaintiff has failed to show that either defendant had knowledge of the hazard presented by the broken wet box or the puddle of water resulting from the rainstorm. She has also failed to demonstrate that the box had been there long enough to constitute constructive notice of a hazard. Without this awareness, defendants had no duty to warn plaintiff. They were not negligent and are not responsible for her fall.
 {¶ 26} The second assignment of error is overruled.
 {¶ 27} For her first assignment of error, plaintiff states:
 {¶ 28} "I. The trial court erred in granting the appellees' motions for summary judgment on the [sic] basis that the danger was "open and obvious."
 {¶ 29} Because defendants owed no duty to plaintiff, the issue of open and obvious is not pertinent. Thus the first assignment of error is moot. The trial court properly granted both defendants' motions for summary judgment.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and COLLEEN CONWAY COONEY, J., concur.
[1] Defendant Falkowski was dismissed without prejudice before his joint motion for summary judgment with Aspen was granted. He is not, therefore, a party to this appeal.
[2] It is not known whether the plastic bag holding the mud inside the box was intact.