Pryor et al., Appellants, *v.* Webber, Appellee.

(No. 69-414—Decided September 23, 1970.)

*Messrs. Volkema, Redmond & Post* and *Mr. Russell H. Volkema,* for appellants.

*Messrs. Crabbe, Newlon, Potts, Schmidt, Brown & Jones* and *Messrs. Graham & Dutro,* for appellee.

STEPHENSON, J.   The principal contention of appellants in this appeal is that prejudicial error was committed by the trial court in allowing the defense to elicit, on cross-examination of plaintiff, over objection, that payments of money were made to plaintiff by her employer during the period she was unable to work as a result of the accident.   It is urged that such was in violation of the collateral source rule.

The collateral source rule has been defined as "the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer." Maxwell, The Collateral Source Rule in the American Law of Damages, 46 Minn. L. Rev. 669, 670.

In Ohio, as elsewhere, it is a rule of universal application in a tort action, that the measure of damages is that which will compensate and make the plaintiff whole. *Lawrence Rd. Co. v. Cobb,* 35 Ohio St. 94; *Mahoning Valley Ry. Co. v. DePascale,* 70 Ohio St. 179.   To such general rule,

the collateral source rule is a recognized exception. 25 Corpus Juris Secundum 1012, Damages, Section 99(1); *Cunningham* v. *Rederiet Vindeggen*, 333 F. 2d 308.

"* * * Thus the plaintiff who has been paid his salary or a pension during disability, or had his medical expenses paid for by another, or out of the proceeds of an accident insurance policy, may still recover full damages for these items from a defendant who is liable for the injury. To this extent, plaintiff may get double payment on account of the same items. The defendant wrongdoer should not, it is said, get the benefit of payments that come to the plaintiff from a 'collateral source' (*i. e.*, 'collateral' to the defendant)." 2 Harper and James, The Law of Torts, 1343, Section 25.22.

This court, without identification of the rule as such, has refused to allow a defendant tort-feasor the benefit of a surgeon's bill incurred as a result of the defendant's act, which bill was voluntarily paid by township trustees before trial. *Klein* v. *Thompson*, 19 Ohio St. 569. In *Trumbull Cliffs Furnace Co.* v. *Shachovsky*, 111 Ohio St. 791, this court allowed a plaintiff to recover damages for personal injuries from a third party tort-feasor, even though the plaintiff had previously received workmen's compensation benefits for his injuries. In the opinion, at page 796, it is stated:

"* * * the compensation provided by the workmen's compensation law is in the nature of an occupational insurance, and, like general insurance, cannot be deducted and treated as an offset for claims for damages for wrongful injury or death."

Lower courts in Ohio have also had occasion to consider and apply the rule, although the rule has not always been identified as such. *Levy* v. *Coon*, 11 Ohio App. 2d 200 (workmen's compensation benefits); *Thompson* v. *Ohio Fuel Gas Co.*, 11 Ohio App. 2d 212 (workmen's compensation benefits); *Rigney* v. *Cincinnati Street Ry. Co.*, 99 Ohio App. 105 (wages); *Sherer* v. *Smith*, 85 Ohio App. 317 (medical expenses); *McDowell* v. *Rockey*, 32 Ohio App.

26 (workmen's compensation benefits); *Ohliger* v. *Toledo*, 20 C. C. 142 (gratuitous physician's fees); *Derrham* v. *Cincinnati Traction Co.*, 21 N. P. (N. S.), 418 (medical expenses paid by brother).

Since, by the collateral source rule, the receipt of collateral benefits is deemed irrelevant and immaterial on the issue of damages, it follows, as a necessary concomitant, that not only are the benefits not to be deducted but that the receipt of such benefits is not to be admitted in evidence, or otherwise disclosed to the jury. *Ridgeway* v. *North Star Terminal & Stevedoring Co.* (Alaska), 378 P. 2d 647; *Miller* v. *Schafer*, 102 Ariz. 457, 432 P. 2d 585; *Ashley* v. *American Automobile Ins. Co.*, 19 Wis. 2d 17, 119 N. W. 2d 359; *Wolfe* v. *Whipple*, 112 Ill. App. 2d 255, 251 N. E. 2d 77; *Palandro* v. *Bollinger*, 409 Pa. 296, 186 A. 2d 11; *Lobalzo* v *Varoli*, 409 Pa. 15, 185 A. 2d 557; *Graves* v. *Poe* (Tex. Civ. App.), 118 S. W. 2d 969; *Greyhound Corp.* v. *Ford* (Fla. App.), 157 So. 2d 427. See, also, *Walker* v. *Missouri Pacific Rd. Co.* (Tex. Civ. App.), 425 S. W. 2d 462; *Donnell* v. *Donnell*, 220 Tenn. 169, 415 S. W. 2d 127.

This aspect of the collateral source rule is epitomized in *Wolfe* v. *Whipple, supra* (112 Ill. App. 2d 255), 267, wherein it is observed:

"* * * The entire theory of the collateral source rule is to keep the jury from learning anything about the collateral income so that it will not influence the decision of the jury. * * *"

At the outset, we are met with appellee's contention that this court should not consider, under the facts of this case, any application of the collateral source rule and the benefits received should be held admissible on the issue of damages. The reasoning advanced for this contention is that applicability of the rule is dependent upon the nature, the amount and the source of payments; that the state of the record herein is such that there is an insufficient factual basis for a determination as to whether the benefits received were within the scope of the collateral source rule and that the benefits may have been direct, such as services

for the employer performed at home while off work or the benefits may have been from a source which appellee created or to which he contributed, rather than collateral.

Such argument presents the preliminary question of who has the duty to establish the basis—the factual basis —for determination of the question of applicability of the collateral source rule. Here, the admission in evidence of plaintiff's receipt of benefits was sought by the tort-feasor, not by the injured party. "It is a general rule that the burden of proving facts which must be established in order to make evidence admissible is on the party who wishes to give such evidence." 1 Jones on Evidence, 387, Section 210. "The party offering testimony has the burden of establishing its admissibility; and where there is a preliminary question of fact to be decided before evidence is admitted, the burden of proving the preliminary fact rests upon the proponent of the subject evidence." 31A Corpus Juris Secundum 168, Evidence, Section 103.

We can perceive no good reason why plaintiff, who affirmatively pleaded and presented evidence that she lost wages, should be required to disclose the receipt of benefits from her employer during the period she was off work, and to present evidence that would bring those benefits within the scope of the collateral source rule. Adoption of such a rule would require disclosure of the receipt of collateral benefits in every case and would parade before the jury evidence having no relevance to the issues the jury must decide. Where a plaintiff seeks recovery for wages lost while unable to work due to a tort-feasor's negligent act, and the tort-feasor claims that benefits have been received and that such benefits are not collateral but are direct benefits, the burden of establishing that such benefits are direct benefits, and therefore are admissible on the issue of damages, is on the tort-feasor.[1] In our view, the

---

[1] Since the jury should not be informed of a receipt of collateral benefits, whether certain receipts are or are not from a collateral source becomes a question of law to be determined by the trial court outside the presence of the jury.

benefits, as they stand in the record, were simply diminished wages. If such wages are within the collateral source rule, the rule prohibited their admission.

The ultimate question which this appeal presents is whether, under the facts herein, the receipt by plaintiff of diminished wages during the period she was off work due to her disability resulting from the accident is within the collateral source rule.

This court has not had a prior occasion to consider the question presented here.[2] The great weight of authority is that the payment of wages, whether the result of a contract between the employee and his employer or simply a gratuity on the part of the employer, does not reduce the damages otherwise recoverable.

In an exhaustive annotation found in 7 A. L. R. 3d 520, Section 3(a), the following statement is made:

"Although the courts of different jurisdictions are not in entire agreement on the question, the rule followed in most jurisdictions is that the amount of recovery from a third person (defendant) who is responsible for a personal injury is not to be mitigated or reduced by the receipt by the plaintiff from his employer of wages, salary, or commissions during the period of plaintiff's disability regardless of whether such payments are made pursuant to a contractual obligation or as mere gratuities. * * * "

The American Law Institute, in 4 Restatement of the Law, Torts, 620, Section 920, comment (e), has adopted a position in accord with the majority view. It is therein stated:

" * * * Where a person has been disabled and hence cannot work but derives an income during the period of

---

[2]We agree with the analysis of the Court of Appeals in *Rigney* v. *Cincinnati Street Ry. Co.*, 99 Ohio App. 105, motion to certify overruled, contrary to the conclusion set forth in 16 Ohio Jurisprudence 2d, 257, Damages, Section 120, that the affirmance by this court, without opinion, in 74 Ohio St. 491, of *Pittsburgh, Cincinnati & St. Louis Ry. Co.* v. *Fagin*, 3 N. P. (N. S.) 30, 15 O. D. 605, did not constitute an adoption by this court of the rule as to recovery of lost wages as applied by the trial court.

disability from a contract of insurance or from a contract of employment which requires payment during such period, his income is not the result of earnings but of previous contractual arrangements made for his own benefit, not the tort-feasor's. Likewise, the damages for loss of earnings are not diminished by the fact that his employer or a third person makes gifts to him even though these have been given because of his incapacity."

The rationale of the majority rule is set forth in 22 American Jurisprudence 2d 286, Damages, Section 206, and also in 7 A. L. R. 3d 522, Section 3(b), wherein it is stated:

"The reason generally advanced in support of the general rule is that the wrongdoer can have no concern with the transaction between the employer and employee and there is no equitable ground to grant the tort-feasor a 'windfall' by allowing him a credit for payments made by the employer."

The courts of Missouri and Pennsylvania adopt the rule only if the payments by the employer are gratuitous and not based upon a contractual obligation. *Moon* v. *St. Louis Transit Co.*, 247 Mo. 227, 152 S. W. 303; *Stevenson* v. *Pennsylvania Sports & Enterprises*, 372 Pa. 157, 93 A. 2d 236. A small minority of jurisdictions, including New York, deny a plaintiff the right of recovery for lost wages, where the employer has paid benefits, whether paid by contract or gratuitously. *Drinkwater* v. *Dinsmore*, 80 N. Y. 390.

On reason, and in accord with the majority rule, we are of the view that wages or other benefits paid to an employee by a private employer, whether gratuitously or by reason of contract, while he is unable to perform any work due to a disability caused by the negligent act of a third party, are collateral in nature and do not bar a recovery by the employee from such third party of the wages he would have earned had he been able to work and perform services for his employer.[3]

---

[3] A reviewing court must take the record as it finds it. From the evidence presented herein, the collateral benefits were simply diminished

Where such payments by an employer are gratuities, the conclusion herein reached is clearly within the reasoning adopted by this court in *Klein* v. *Thompson, supra* (19 Ohio St. 569), that gratuitous payments by a third party are not intended to be in satisfaction of the injured party's claim against a wrongdoer.

Where such payments are made pursuant to a contractual provision of the employment contract between the injured party and his employer, the injured party, prior to his injury, has furnished the consideration making obligatory such payments by his promise, and the faithful performance of his duties. Wages, almost universally, are defined by the courts to be compensation paid a hired person for his labor or services rendered. See 44A Words and Phrases, 57. The compensation which an employee receives when he is off work and performing no services for his employer, is comparable to the proceeds of a policy of insurance to which he has contributed. As with insurance proceeds, generally, such payments should not inure to the benefit of the wrongdoer and diminish his liability.

We hold that the collateral source rule is applicable herein, and that the rule prohibits the introduction in evidence of the wages received by plaintiff during disability.

Appellee urges, however, that irrespective of the collateral source rule, the controverted testimony was still admissible for credibility purposes and affected the plaintiff's credibility in two respects: (1) The testimony that wages were ''lost'' was false, was designed to elicit sympathy from the jury to defendant's prejudice and was admissible by an exercise of a sound discretion of the trial court to rebut such falsity, and (2) the controverted disclosure was properly admitted as bearing on plaintiff's

wages, provided without work being performed therefor. There are statements of counsel, made in the course of his objections, that the benefits were paid from a "policy" to which she had contributed. If the benefits were, in fact, the receipt of insurance proceeds, the collateral source rule clearly would be applicable.

testimony that she could not work because of her injury by presenting a motivation for not working other than her injury.

The Court of Appeals found that the evidence was properly admitted upon the first ground, stating in its opinion, after approval of the first four questions on direct examination set out separately above:

"However, counsel then elicited the testimony that the witness had *lost* $1,684. The statement simply was not true, inasmuch as the witness had been paid. Such a statement, in addition to being false, invokes the sympathy of the jury over loss of wages which, in fact, are not lost. It is true that at the end of the first series of questions and answers which are perfectly proper for counsel to ask, the jury may incorrectly infer there has been a loss.

"However, the collateral source rule cannot, and does not, protect a witness from cross-examination following the utterance of a statement which is false. * * *"

Here, we are not persuaded that there exists such a distinction between the questions and answers found proper and the answer that wages were "lost" to merit a conclusion of falsity. The "lost wages," concerning which Mrs. Pryor testified, clearly referred to the wages she would have received had she been working and rendering a service to her employer rather than to the benefits she received from her employer while disabled and not working. In our view, the claimed prejudice of jury sympathy over the loss of such wages would be just as great if the loss is established indirectly by the questions deemed proper as by direct testimony that they were "lost." That such testimony would arouse the sympathy of a jury, whether such loss of wages is established by direct evidence or by inference, is extremely questionable, since the recipient is a married woman whose husband is employed. The prejudice, if it exists at all, exists because the rule exists and not because of the manner of presentation of the testimony.

The exclusionary feature of the collateral source rule, the purpose of which is to prevent prejudicial disclosures,

should not depend upon what is to us, in this case, a matter of semantics.

Neither do we find, under the facts of this case, that the second ground urged by appellees, *i. e.*, that the evidence was admissible as bearing on plaintiff's credibility by demonstrating a motive other than injury for staying off work, justified the admission of such benefits herein. The receipt of collateral benefits by the plaintiff was irrelevant on the issue of damages. Cross-examination upon matters irrelevant to the issue for the purpose of discrediting a witness's testimony rests within the sound discretion of the trial court. *Wroe* v. *State*, 20 Ohio St. 460; *Bank of Cadiz* v. *Slemmons*, 34 Ohio St. 142, 56 Ohio Jurisprudence 2d 765, 767, Sections 331 and 332.

The exercise of that discretion necessarily involves a weighing of the probative value of such evidence against its potential misuse by the jury. See *Garfield* v. *Russell*, 251 Cal. App. 2d 275, 59 Cal. Rep. 379. Here, defendant sought and, over objection, was permitted to disclose such benefits. No attempt was made nor was the *amount* of such benefits disclosed so that the jury could reasonably relate the benefits received to the amount plaintiff would have earned if she had worked. Under such circumstances, the simple disclosure that benefits were received had little, if any, probative value in assisting the jury in weighing plaintiff's testimony as to why she did not work and should have been excluded.

In other jurisdictions outside Ohio, while there is some support for appellee's position, there is respectable authority in which judicial recognition of the potential misuse and resulting prejudice of such evidence has resulted in its outright rejection when offered for the purpose here under consideration. *Eichel* v. *New York Central Rd.*, 375 U. S. 253, 11 L. Ed. 2d 307; *Louisville & N. R. Co.* v. *Utz*, 299 Ky. 765, 187 S. W. 2d 439; *Clark* v. *Piccillo*, 75 N. J. Sup. 123, 182 A. 2d 381; *Traders & General Ins. Co.* v. *Reed* (Tex. Civ. App.), 376 S. W. 2d 591; *Aylor* v. *Intercounty Construction Corp.*, 381 F. 2d 930.

We hold that insofar as the extent of the cross-exam-

ination upon collateral issues was within the discretion of the trial court, the admission of the controverted testimony constituted an abuse of discretion.

We conclude that the admission in evidence of the receipt of collateral benefits was error, and conclude, also, that the error was prejudicial. In 77 A. L. R. 2d 1156, the following has been stated with respect to disclosure of workmen's compensation benefits:

"Generally, it has been held to constitute error, requiring a reversal or new trial, to bring to the jury's attention the fact that the plaintiff in a personal injury or death action is entitled to workmen's compensation benefits. The courts have reasoned that such information would tend to prejudice the jury and influence their verdict, either as to *liability or damages*, as such information is ordinarily immaterial and irrelevant." (Emphasis added.)

The reasoning that juries may be prejudiced by disclosure of collateral benefits may have a foundation in fact. See 19 Ohio St. L. J., 158, 169. The Jury, The Law and The Personal Injury and The Damage Award.

The admission in evidence of the receipt of collateral benefits, after the testimony as to lost wages, strongly suggested to the jury that Mrs. Pryor had lied to the jury and was, in fact, attempting to collect twice as to that item of damage. The injury claimed by Mrs. Pryor was such that acceptance by the jury of her testimony as to subjective symptoms was extremely critical to her case. Additionally, it appears from the record that her credibility was also important in the establishment of liability. We note also that, based upon the disclosure of such benefits, the credibility of Mrs. Pryor was attacked in argument to the jury.

We are of the view that the error can be corrected only by the granting of a new trial on all issues. See *Palandro v. Bollinger, supra* (409 Pa. 296); *Garfield* v. *Russell*, 251 Cal. App. 2d 275, 59 Cal. Rep. 379; *Powers* v. *Temple*, 250 S. C. 149, 156 S. E. 2d 759.

Since this case must be retried, we deem it unnecessary

to consider the remaining claim of error wherein attack is made upon the correctness of the jury finding as it relates to the evidence of liability.

The judgment is reversed and the cause is remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, DUNCAN and CORRIGAN, JJ., concur.[4]

SCHNEIDER, J., concurs in paragraph one of the syllabus.

STEPHENSON, J., of the Fourth Appellate District, sitting for MATTHIAS, J.

---

[4]CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.