OPINION
Defendant-Appellant, the Estate of Lucile Phillips and its executor, C. Alan Phillips, are appealing the Miami County Court of Common Pleas' judgment affirming the jury verdict awarding Plaintiff-Appellee Mary Carville $20,000 in damages as a result of personal injuries sustained from a traffic accident.
On October 24, 1994, Carville's automobile was rear-ended by a vehicle operated by Lucile Phillips. As a result of personal injuries sustained from that accident, Carville filed suit against Lucile Phillips on October 24, 1996. Carville amended her complaint on May 6, 1998 naming the Estate of Phillips and its executor, C. Alan Phillips, as the defendants (hereinafter collectively referred to as "Phillips"). Phillips answered the complaint on June 8, 1998, asserting several defenses including failure to join and failure to mitigate damages, and arguing that Carville was not the real party in interest for all claims.
A jury trial was scheduled for November 2, 1999. On November 1, 1999, Phillips filed a motion in limine to preclude Carville from introducing, referencing, or otherwise referring to any medical or chiropractic bills paid by any party not before the court. Phillips contended that the insured had no right to assert a claim against a tortfeasor for subrogated medical expenses, thus Carville was not entitled to receive damages for medical bills paid by her insurance company. Phillips renewed the motion prior to trial, however the trial court overruled the motion based upon lack of evidence that Carville's insurance policy had contained a reimbursement or a subrogation clause.
At trial, Carville testified that on October 24, 1994, she was westbound on St. Rt. 36 in Piqua, Ohio, in the lefthand turn lane attempting to turn into McDonald's. She was struck from behind by Lucile Phillips, resulting in bruising on her left knee, hips and lower back. She was absent from work for three and a half days after the accident. Carville developed head and neck aches several days later, and first saw her chiropractor, Dr. David A. Rank, two weeks after the accident. Dr. Rank continued to treat Carville somewhat regularly up to the time of trial. Dr. Rank testified that Carville had experienced permanent soft tissue injuries as a result of the accident, and Carville would have to undergo "lifetime care." At the time of trial, Carville had incurred medical bills of approximately $7,500, which included one hundred sixty-five visits to Dr. Rank.
Testifying via videotaped deposition on behalf of Phillips was Thomas A. Bender, an orthopedic surgeon who specialized in spinal disorders. Dr. Bender examined Carville on April 18, 1997 and determined that she had "normal mobility of the lumbar spine * * * considering the confines or limitations posed by her obesity." Dr. Bender diagnosed Carville with a "low level sprain or strain of the neck or low back" based upon her "lack of significant employment disability" and the "lack of initial or immediate physical therapy or chiropractic in proximity to the accident."
The jury returned a verdict in Carville's favor in the amount of $20,000. The trial court filed a judgment entry affirming the verdict on December 7, 1999. Phillips now appeals that judgment entry, asserting three assignments of error.
 I.
The trial court erred to the prejudice of Defendant/Appellant by permitting Plaintiff to recover damages in the form of medical bills paid by parties not before the court.
In his first assignment of error, Phillips maintains that Carville was not the real party in interest regarding the claims resulting from the medical bills paid by the insurance company, and thus she should not be permitted to recover such bills as damages. Phillips' attorney further asserted through oral argument that the collateral source rule prevented Phillips from producing evidence at trial that a portion of Carville's medical bills were paid by her insurance company, and therefore she was not the real party in interest.
The common law collateral source rule has prevailed in Ohio in tort actions. The rule has been defined as "the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer." Pryor v. Webber (1970), 23 Ohio St.2d 104, 107, 52 Ohio Op.2d 395, 397. (Citation omitted.) The collateral source rule does apply to situations such as this one where a plaintiff has recovered some portion of her damages from an independent third party, in this case an insurance company. Klosterman v. Fussner (1994),99 Ohio App.3d 534, 538, citing Pryor, supra, 52 Ohio Op.2d 395. As we stated in Klosterman, the collateral source rule has a substantive and an evidentiary purpose:
 Substantively, the collateral source rule is an exception to the general rule in tort actions that the measure of the plaintiff's damages is that which will make her whole. Through this exception, the plaintiff is allowed to receive more than the amount of damages she actually incurred. The rationale for the exception to the general rule is that benefits the plaintiff receives from a source wholly independent of the wrongdoer should not benefit the wrongdoer by reducing the amount of damages which a plaintiff might otherwise recover from him. [Pryor, supra,] at 109, 52 Ohio Op.2d at 397[.] As an evidentiary rule, the collateral source rule bars the introduction into evidence of collateral payments to the plaintiff in order to prevent the jury's consideration of such payments in determining the amount of damages. [Pryor, supra,] at 107, 52 Ohio Op. 2d 396[.]
 Id. at 538-539.
In 1988, the General Assembly enacted R.C. 2317.45 as part of the Tort Reform Act of 1987, Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 694, to abrogate the common law collateral source rule. At that time, R.C.2317.45 required trial courts to consider a plaintiff's collateral benefits and reduce his jury award accordingly. The Ohio Supreme Court found this statute unconstitutional in Sorrell v. Thevenir (1994),69 Ohio St.3d 415, because it had violated the due process clause of the Ohio Constitution.
The 1996 Tort Reform Act, Am.Sub.H.B. No. 350, effective January 27, 1997, again abrogated the common law collateral source rule adopted inPryor, and required a jury to consider collateral benefits obtained by a plaintiff when calculating compensatory damages. However, in State exrel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, the Ohio Supreme Court found that the amended R.C. 2317.45 was a mere attempt to "sidestep" Sorrell. The Sheward court declared the language of R.C. 2317.45, as created by Am.Sub.H.B. No. 350, unconstitutional and found that it no longer provided a jurisdictional basis for review of the application of the collateral source rule. Id. See, also, Tignor v.Franklin Cty. Bd. of Commrs. (Apr. 27, 2000), Franklin App. No. 99AP-571, unreported.
In this case, Phillips is correct that the collateral source rule does apply, however we find that the trial court did not err in withholding information from the jury of the insurance company's payments of Carville's medical bills. Under the common law collateral source rule, such benefits were "not to be admitted in evidence, or otherwise disclosed to the jury," therefore it would have been inequitable for Phillips, the wrongdoer, to gain benefit from payments Carville received from her insurance company. Pryor, supra, at 109, 52 Ohio Op.2d at 397.
Phillips further argues that because the insurance company paid benefits to Carville, the insurance company was the real party in interest for those paid bills. We do not agree. According to the Ohio Supreme Court,
 [a]n insured who is injured by a tortious act retains his ownership of the resultant claim for damages against the tort-feasor in that he may, in the absence of a motion or a raising of the issue of joinder, maintain an action thereon in his own name for the full amount of damages, even though he has made a partial assignment of the claim to an insurer.
 Holibaugh v. Cox (1958), 167 Ohio St. 340, 345-346, 4 Ohio Op.2d 461, 465. Thus, in this case, we find that the trial court did not err in allowing Carville to maintain the complete action in her name, regardless of whether or not she had partially assigned her claim to the insurance company.
Phillips' first assignment of error is overruled.
 II.
The trial court erred to the prejudice of Defendant/Appellant by permitting the introduction of evidence regarding medical bills that were not disclosed to Defendant/Appellant in advance of trial.
Phillips asserts that Carville failed to disclose any medical records or bills after January of 1997, thus the trial court erred in permitting evidence of damages after that date to be admitted for the jury's consideration. It is Phillips' argument that he suffered prejudice because, had he been aware of the bills prior to the day before trial, he would have known that Carville's insurance company had paid for a portion of Carville's medical bills and thus he could have either joined the insurance company as a party to the action, or the trial court would not have permitted the bills to be included as damages because Carville did not pay for all of her treatment. We do not agree. Based upon our determination of Phillips' first assignment of error, we cannot find that the outcome at trial would have been different with respect to damages because of Carville's insurance company's payment of a portion of the medical bills.
Phillips also argues that he was prejudiced because his expert did not have the opportunity to review the specific medical bills and treatment to determine their reasonableness and necessity, and therefore he was not able to give specific testimony as to why the treatment provided and its duration were not reasonable and necessary. Carville asserts that because Phillips had notice of the ongoing bills and records prior to trial, he was not prejudiced by the trial court's decision to admit them into evidence. Carville contends that the parties had discussed the bills during a pretrial conference, that the records had been faxed to Phillips, and that they were "calculated" in the trial judge's notes.
In Jones v. Murphy (1984), 12 Ohio St.3d 84, the Ohio Supreme Court cautioned against disregarding intentional violations of the civil rules:
 One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries.
The Jones court found that a trial court may exclude evidence when the non-production of that evidence results from an intentional noncompliance with the rules of discovery. Id. at 86. As we recently stated in Stokes v. Hartzell Propeller, Inc. (Nov. 12, 1999), Miami App. Nos. 98 CA 57, 98 CA 60, unreported,
 Exclusion of otherwise reliable and probative evidence is a severe sanction, however, and it has been recognized that even where the undisclosed [evidentiary material] creates a substantial likelihood of surprise and there is an indication that one party deliberately disrupted the free flow of information between the parties, the court may grant a continuance to allow the other side time to find and present rebuttal testimony as an alternative to excluding the expert testimony. Nickey v. Brown
(1982), 7 Ohio App.3d 32, 34. "Ordinarily, it is the policy in Ohio to impose the least severe sanction * * *, unless the conduct of the [party] is so negligent, irresponsible, contumacious or dilatory as to outweigh the policy that disposition of litigation should be upon its merits." Evans v. Smith (1991), 75 Ohio App.3d 160, 163.
However, the trial court has broad discretion to impose such sanctions, and it is our duty to review those decisions only for an abuse of discretion. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In this case, Phillips requested that the trial court exclude Carville's medical records and bills from 1997 until the time of trial in 1999. The record reflects that the documents were not given to Phillips until the day prior to trial. Although we do not condone Carville's tactics of waiting until the eve of trial to produce and disclose two years' worth of medical bills and records, Phillips requested only the sanction of exclusion for Carville's action. We further find that although Phillips may have been prejudiced by the "eleventh hour" admission of the records and the bills, the trial court did not abuse its discretion in allowing their inclusion at trial. The trial court briefly admonished Carville, and appropriately balanced the factors in determining to admit the evidence. The trial court found that exclusion was inappropriate because Dr. Bender had testified that "appropriate" treatment for Carville had ended long before 1997, and because the parties had agreed prior to trial that the chiropractic bills were approximately $7,000. No evidence was provided to us to indicate that Dr. Bender would have testified differently had he known of the specific dates and kinds of treatments Carville had undergone during the period in question. Under these circumstances, we cannot find that the admission of the evidence at issue was so "palpably and grossly violative of fact or logic" as to require reversal of the jury's verdict. Nakoff, supra, at 256.
Based upon the above discussion, we find that the trial court did not abuse its discretion in admitting the evidence. Accordingly, Phillips' second assignment of error is overruled.
 III.
The trial court erred to the prejudice of Defendant/Appellant by failing to instruct the jury on the Plaintiff/Appellee's duty to mitigate her damages.
Phillips maintains that there was ample evidence at trial demonstrating how Carville's long-term chiropractic treatment may have resulted from her failure to mitigate her damages, and therefore the trial court erred in denying his request for a jury instruction on mitigation. Contrary to Carville's position, Phillips requested that the trial court instruct the jury on the issue of mitigation and he properly preserved his objection of the trial court's denial to do so.
Requested instructions should ordinarily be given if, as applied to the case, they are correct statements of law and if reasonable minds might reach the conclusion sought by the instructions. Murphy v.Carrolton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. The trial court does not have the obligation to instruct the jury where there is no evidence to support an issue, or where such law is not applicable to a given case.Id.; State v. Guster (1981), 66 Ohio St.2d 266, 20 Ohio Op.3d 249.
Although Phillips did not offer a suggested instruction to the trial court, it is a general principle of law that a plaintiff who is injured by the tort of another has a duty to mitigate and may not recover damages for harm that could have been avoided with reasonable effort or expenditure thereafter on behalf of the plaintiff. Johnson v. Univ.Hosp. of Cleveland (1987), 44 Ohio St.3d 49, 57, citing 4 Restatement of the Law 2d, Torts (1979) 500, § 918(1). See, also, Prosser Keeton on Torts (5th Ed. 1984) 458, § 65. The burden of proof is on the defendant to establish that the plaintiff failed to mitigate her damages.Mers v. Dispatch Printing Co. (1988), 39 Ohio App.3d 99, 104. However, mitigation does not require a plaintiff to "make extraordinary efforts to do what is unreasonable or impracticable." Dunn v. Maxey (1997),118 Ohio App.3d 665, 668, citing Cline v. Am. Aggregates Corp. (1989),64 Ohio App.3d 503, 511.
Phillips argues that Carville could have mitigated her damages by terminating her chiropractic treatment in 1997 after "admitting" to Dr. Bartneck that the treatment "was not doing [her] any good." However, at trial, Carville testified that she did not remember making that remark. In fact, Carville and Dr. Rank both testified that Carville's physical condition had improved during the course of her chiropractic treatment. Based upon these testimonies, we agree with the trial court that mitigation was not an issue in this case because Carville acted reasonably and practically in continuing her treatment which had been improving her condition.
Phillips also contends that Carville failed to mitigate her damages when she failed to join a health spa upon Dr. Rank's advice. Although Carville asserts that she testified to not having joined a health spa because of financial reasons, there was not testimony as to why she had failed to follow Dr. Rank's advice. We do note that Dr. Rank testified that strengthening and hardening of the muscles could be done "to a certain extent" without a health spa, and Carville testified that she had performed at-home exercises upon Dr. Rank's advice. Additionally, there was no testimony regarding the financial burden a health spa membership would have placed upon Carville or the value of doing such in terms of speeding her recovery, but it is a reasonable presumption that the financial burden of joining a health spa would have increased Carville's damages. Without evidence that the cost of joining a health spa would have been less than the benefits of future chiropractic treatments, and without evidence that joining a health spa would have decreased the amount of necessary chiropractic treatments, we do not find error in the trial court's decision that Carville had not failed to mitigate her damages.
Based upon the above analysis, Phillips' third assignment of error is not well-taken.
The judgment of the trial court is affirmed.
 __________________________ FREDERICK N. YOUNG, J.
GRADY, P.J. and FAIN, J., concur.