OPINION
This case involves an automobile collision between Plaintiff-Appellant Christine Banford and Defendant-Appellee William Cline. Cline was driving a vehicle owned by Brian Benfield, and insured by State Farm Insurance Company, both also named as defendants.
The collision occurred when Cline rear-ended Banford while she was stopped at a traffic light. Cline testified that he had stopped at the traffic light approximately a car length behind the Camaro when he began looking at his map. He believes his foot must have slipped off the brake somewhat, causing his vehicle to collide with the rear-end of Banford's Camaro. Neither party could testify with any certainty as to Cline's speed at the time of impact. Banford testified that after the accident, Cline apologized and told her he was reading his map. The evidence indicates the damage to each car was slight.
Prior to the trial, the court issued several decisions which are contested in this appeal. Those decisions are specified in each of the assignments of error. At trial, the jury awarded $350 to Banford for pain and suffering, awarding no damages for her medical bills. Banford's assignments of error are as follows:
 I. The trial court committed prejudicial error by overruling Appellant's motion for sanctions pursuant to Civ.R. 36 and for a finding of frivolous conduct by Defendant and his attorney pursuant to ORC § 2323.51.
 II. The trial court committed prejudicial error by admitting the opinion testimony of Bernard B. Bacevich, M.D.
 III. The trial court committed prejudicial error by overruling Appellant's motion for a directed verdict on the issue of proximate cause.
 IV. The trial court committed prejudicial error by refusing to permit the Appellant to ascribe a value to the time she lost from work to seek medical/rehabilitation treatment.
 V. The trial court committed prejudicial error by arbitrarily excluded [sic] evidence of $5,000 in medical expenses for services rendered to the Appellant.
 I
Banford's first assignment of error is twofold. First, she argues that the trial court erred in overruling her motion for sanctions based on Cline's answers to her requests for admission. During discovery, Banford sent combination requests for admission and interrogatories to Cline. Banford alleges Cline answered multiple fact questions with general denials without explanation, contrary to Civ.R. 36. Regarding answers to requests for admission, Civ.R. 36 states in pertinent part:
 The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder.
This rule has been interpreted to imply if a party generally denies a request for admission without reasonable explanation, the matter is considered admitted. St. Paul Fire Marine Ins. Co. v. Battle (1975),44 Ohio App.2d 261, 269. Banford contends that Cline's answers to questions regarding proximate cause were general denials and thus should be considered admitted. We disagree.
After admitting that his negligence was the sole and proximate cause of the collision, Banford requested that Cline admit his actions proximately caused her ten thousand dollars in medical bills. He responded as follows:
 The alleged collision was minor in nature and did not result in any significant damage. The Plaintiff suffered from pre-existing injuries and conditions to which the amounts are attributed. The amounts listed are not directly related to any injury arising out of this accident. Defendant reserves the right to supplement as further discovery is conducted and an Independent Medical Examination is performed on Plaintiff.
Banford argues that good faith required Cline to show he made reasonable inquiry into her medical history to prove his negligence did not cause all of the medical bills. Further, she claims that her burden to prove this at trial is irrelevant because the purpose of requests for admission is to eliminate the need to prove such issues at trial. Although this purpose is correct, it should not be interpreted to shift the burden of production from plaintiff to defendant. Banford in essence has argued that because she requested Cline to admit that he proximately caused her injuries, he now has the burden to prove that he did not. We do not interpret Civ.R. 36 this way. Cline has argued from the outset that although he caused the collision, Banford's injuries did not result from that collision. Consequently, we find that Cline's denial and explanation to the request for admission of proximate cause was sufficient under Civ.R. 36.
The second part of the first assignment of error alleges Cline's attorney engaged in frivolous conduct by listing assumption of risk and contributory negligence defenses in his answer and by having his client sign interrogatories based on false information. R.C. 2323.51(A)(2)(a) defines frivolous conduct as conduct of a litigant that satisfies any of the following:
 (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
 (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
 (iii) Allegations or other factual contentions have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
 (iv) Denials or factual contentions are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.
Banford argues that Cline's assertion of contributory negligence and assumption of risk and then his later denial that he was the proximate cause of the collision constituted frivolous conduct. Again, we disagree.
First, we must point out that nearly every defendant in a personal injury lawsuit asserts the defenses of contributory negligence and assumption of risk in their answer. This is not only an accepted practice, but it is also imperative so that those defenses are not waived if further investigation reveals their viability. By the time an individual is served with a complaint and retains an attorney to defend him in the lawsuit, there is very little time for the attorney to investigate the case before an answer must be filed. Therefore, it would be absurd to find every attorney who has asserted these defenses in their answer, when they ultimately have no basis, to have engaged in frivolous conduct.
Furthermore, Banford incorrectly alleges that Cline maintained these defenses in his answers to interrogatories and requests for admission. As mentioned previously, Cline specifically admitted that his actions were the sole and proximate cause for the collision. This indicates that after further investigation, Cline and his attorney realized the defenses were not viable so they admitted liability for the collision, negating the need for Banford to prove this at trial. We fail to see how these actions violate R.C. 2323.51.
Based on the foregoing discussion, we agree with the trial court's decision overruling Banford's motion for sanctions as Cline and his attorneys did not violate Civ.R. 36 or R.C. 2323.51. Accordingly, Banford's first assignment of error is overruled.
 II, III
In her second assignment of error, Banford alleges that the trial court erred admitting Dr. Bernard Bacevich's testimony regarding the relationship between the speed of the vehicles and the resulting injury. Because she feels this inadmissible testimony was the only evidence negating proximate cause, Banford claims in her third assignment of error that the trial court should have issued a directed verdict in her favor.
The trial court has broad discretion to determine whether a witness is qualified to present expert testimony. State v. Maupin (1975),42 Ohio St.2d 473, 479. This determination will not be reversed absent an abuse of that discretion. Id. The standard for determining whether expert testimony is admissible is found in Evid.R. 702, which provides all of the following must apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
The supreme court has held that an expert may testify to possibility instead of just probability, and such testimony is an issue of weight, not admissibility. State v. Jones (2000), 90 Ohio St.3d 403, 416. Additionally, provided the opposing party has a full opportunity to cross examine the expert witness, the jury has the power to determine how much weight the testimony should be given. Id.
Banford does not dispute that Dr. Bacevich was qualified as an expert orthopedic doctor, and could testify regarding her injuries. Instead, she contests his testimony regarding whether her injuries could have resulted if Cline's vehicle was traveling at a speed of five miles per hour or less. Dr. Bacevich testified that he had read several studies and attended seminars regarding low velocity impacts and the likelihood of resulting injury. Based on this education, he opined that when the speed of a vehicle is less than five miles per hour, it is unlikely that an individual involved will be injured.
As stated previously, Dr. Bacevich was qualified as an expert in the field of orthopedics, and through his training and experience had gained knowledge of automobile accident injuries. In addition, Dr. Bacevich was subjected to vigorous cross examination regarding the extent of this knowledge and experience with low velocity impact injuries. Further, the court instructed the jury in detail regarding expert witness testimony. In this regard, the court explained that any facts assumed by the expert when forming his opinions would have to be established by the greater weight of the evidence, and the jury was to decide if that had occurred. Also, the jury was instructed to decide whether the data on which the expert based his opinions was true, and from there determine the weight to give the expert's testimony. Taking all of this into consideration, we find that the trial court did not abuse its discretion in allowing Dr. Bacevich to express an opinion regarding the possibility of injury resulting from an impact at less than five miles per hour.
Furthermore, the testimony regarding low velocity impacts was not the only evidence negating proximate cause. Dr. Bacevich also testified about the cycles of treatment Banford had received. He explained that she would treat for a few weeks or months and then not see anyone for several months before going back and complaining of recurring pain. He opined that stress in her life resulting from a new job, marriage, birth of a child, and the death of her grandparents, as well as carrying the heavy sample case for her job were more likely to have caused her recurring symptoms than the accident.
In order to sustain a motion for a directed verdict, the court must find, after construing the evidence in a light most favorable to the non-moving party, that reasonable minds could only come to a conclusion adverse to the non-moving party. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 679; Civ.R. 50(A)(4). In making this determination, the trial court must not weigh the evidence or judge the credibility of the witnesses. Id. Instead, "if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." Id., citing Hawkins v. Ivy (1977),50 Ohio St.2d 114, 115 (other citations omitted). Because Dr. Bacevich presented ample testimony negating proximate cause, the trial court properly denied Banford's motion for a directed verdict.
Based on the foregoing, Banford's second and third assignments of error are overruled.
 IV
In her fourth assignment of error, Banford challenges the trial court's decision to prevent testimony regarding her lost wages for attending doctor's appointments and physical therapy sessions. Cline argued in response that Banford did not lose any wages, but instead had been paid for all time off by her employer.
Banford's reasoning in this assignment of error resembles a collateral source argument. The collateral source rule essentially provides that a tortfeasor is not entitled to have the amount of damages reduced when a plaintiff continues to receive payment from her employer for time lost due to her injuries. Pryor v. Webber (1970), 23 Ohio St.2d 104, 111. In Pryor, the court found that the disability payments plaintiff received while she was unable to work due to her injuries were inadmissible under the collateral source rule. Id. at 113. However, Banford testified in this case that she in fact did not lose any time from work. When she attended her appointments, she would make the time up later in the day or in the week. As a result, her employer did not make disability payments or any other form of "benefits" payments, but instead continued to pay her full salary for a full week of work. See, id. at 110 (distinction between direct benefits, not protected by collateral source rule, and collateral benefits).
The admission of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299. We do not find that the trial court abused its discretion by not allowing evidence of lost wages where none existed. Furthermore, the trial court instructed the jury that any award could include "lost time," which would incorporate the time Banford spent attending her doctor's appointments and physical therapy sessions. The jury chose not to award that type of damages. Accordingly, Banford's fourth assignment of error is overruled.
 V
In her fifth assignment of error, Banford argues the trial court erred by not allowing her to present evidence of the $5000 of medical bills paid by her automobile insurance med pay coverage. This assignment of error also implicates the collateral source rule. We discussed this rule as it applies to insurance payments at length in our recent case, Carville v. Estate of Phillips (Aug. 25, 2000), Miami App. No. 99CA52, unreported.
In Carville, the trial court admitted evidence of all medical bills incurred, including those paid by Carville's insurance carrier, but did not permit the jury to hear any evidence regarding the collateral payment by her insurance carrier. We found this was a proper application of the collateral source rule, which has been defined as "the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer." Id. at p. 2, citing Pryor, 23 Ohio St.2d at 107.
The rule has both a substantive and an evidentiary purpose. Substantively, the collateral source rule allows an exception to the general rule in tort cases that a plaintiff can only recover the amount of damages that will make her whole. Under this exception, the plaintiff may recover more than such amount when she has received benefits from a source wholly independent of the wrongdoer. The reasoning for this exception is to prevent the wrongdoer from reaping the benefits of collateral payments by reducing the amount of damages the plaintiff may recover from him. Id. at p. 2. The evidentiary purpose is to prohibit the jury from hearing evidence regarding collateral payments made to the plaintiff, so they may not be considered when determining the amount of damages. Id. In other words, the jury should hear evidence of all bills incurred as a result of the injury, but should not hear evidence of any collateral payment of those bills.
Moreover, any argument that Banford's insurance company is the only real party in interest is without merit. In Smith v. Traveler's Ins. Co., the supreme court found that once an insured assigns a subrogation right to his insurance carrier to recover amounts paid to the insured, the insurance company becomes the real party in interest for that amount. (1977), 50 Ohio St.2d 43, 45. See, also, Ervin v. Garner (1971),25 Ohio St.2d 231, paragraph two of the syllabus (finding an insurer has priority of indemnification when an insured assigns the insurer all rights of recovery for payments made). Relying on contract principles, the Smith court held that if the insured and insurer want to enter a policy contract which allows for such a subrogation agreement, the court would not stand in the way. Id. However, in Smith and Ervin, the insured and his insurer were opposing parties in the action because the insurer was seeking subrogation or reimbursement from their insureds.
Conversely, Holibaugh v. Cox involved facts more similar to the present case. (1958), 167 Ohio St. 340. In Holibaugh, the plaintiff sued the tortfeasor in her own name for the entire amount of her damages, notwithstanding that she had assigned to her insurer the portion of damages it had paid. After the suit had been filed, Holibaugh moved to join her insurer as co-plaintiff, which Cox opposed. Id. at 341. The supreme court held that a plaintiff may bring a suit for the entire amount of her damages solely in her own name, despite having assigned at least a portion of her loss to her insurer. Still, the assignee insurer must be joined in the action if the plaintiff or tortfeasor raise the issue of joinder. Id. at 345-46. A defendant obviously has an interest in joining the assignee insurer in order to avoid two separate lawsuits for the same incident. However, if joinder is not raised by any party, the plaintiff still retains ownership of the claim for damages and may maintain the suit for all damages in her own name. Id. at syllabus. See, also, Sherwood v. Davis (Dec. 15, 2000), Miami App. No. 2000-CA-34, unreported (holding that plaintiff need not reveal the involvement of his insurance carrier that waived subrogation rights, and that the plaintiff may maintain the suit solely in his own name as the real party in interest).
In the present case, the State Farm policy contained a subrogation provision requiring its insured to assign her subrogation rights to State Farm for any payments it made. Nevertheless, State Farm never made any claim for subrogation, nor did either party request that a claim be raised. Moreover, Banford submitted a letter from State Farm specifically waiving its subrogation rights and refusing to join the lawsuit. Consequently, according to Holibaugh, Banford[1] should have been permitted to maintain this suit solely in her own name for all damages, including the $5000 of medical bills paid under her insurer's med pay coverage, without evidence that these bills had been paid by a collateral source.
Having concluded that the trial court erred by not admitting evidence of all Banford's medical bills, we now must determine whether Banford was prejudiced by this error.
 An "evidentiary ruling by a trial court may not be the basis of a claim of error unless the person claiming that error can establish that a substantial right has been affected * * *."
Woodfork v. Jones (Feb. 21, 1997), Montgomery App. No. 15841, unreported, at p. 4, citing Campbell v. Johnson (1993), 87 Ohio App.3d 543,550. In order to establish a substantial right has been affected, Banford must show that the alleged error affected the outcome of the trial. Campbell, supra, at 551.
At the trial, Banford presented evidence of all medical bills not paid by her med pay coverage, amounting to $5322.92. In addition, the trial court advised the jury that they may not have evidence of all medical bills incurred, but were not to concern themselves with that fact. Armed with testimony and documentary evidence of the remaining medical bills, the jury still only returned a verdict for $350, specifically for pain and suffering. The interrogatory for medical bills reflected an award of zero. It appears from the interrogatories that the jury did not intend to award Banford any medical bills, so the amount presented to them was irrelevant. Consequently, we cannot find that the outcome of the trial would have been affected if the jury were made aware of $5000 more in medical bills.
Accordingly, we find that the trial court's error not allowing evidence of the $5000 medical bills paid by Banford's med pay coverage was harmless, and therefore, her fifth assignment of error is overruled.
WOLFF, P.J., BROGAN, J., and FAIN, J., concur.
[1] State Farm was already named as a defendant in the lawsuit because it insured Brian Benfield's vehicle involved in the accident. But no cross-claim or counter-claim regarding subrogation was raised by any party.