OPINION *Page 2 
{¶ 1} Appellant Next Generation Films, Inc. appeals the decision of the Richland County Court of Common Pleas following a jury verdict in favor of Appellee Richard Bowers stemming from a workplace injury. The relevant facts leading to this appeal are as follows.
 {¶ 2} On January 18, 2005, Appellee Bowers, while employed by Appellant Next Generation Films, Inc., suffered a fractured wrist while using one of the company's roller machines used in the production of plastic wrapping products. The machine was manufactured by the Battenfeld Gloucester Engineering Company and sold to appellant in 2000.
 {¶ 3} Appellee's injury was diagnosed as a "non-displaced fracture of the styloid process of the ulna." Appellee thereafter received medical treatment for his injury, including physical therapy, and he was released for full duty with appellant on April 1, 2005.
 {¶ 4} On April 11, 2005, appellee was terminated from his position for reasons unrelated to the aforesaid wrist injury. Approximately six weeks later, appellee consulted his physician regarding pain in his previously-injured wrist. A subsequent MRI indicated a wrist cartilage tear and non-trauma related degenerative changes.
 {¶ 5} In July 2005 and September 2005, appellee saw a second physician, Dr. Robert Dawson. Appellee went back to Dr. Dawson again in December 2006, who proceeded to perform an outpatient debridement of appellee's wrist cartilage in March 2007. *Page 3 
 {¶ 6} On November 13, 2006, appellee filed an action in the Richland County Court of Common Pleas alleging workplace intentional tort against Appellant Next Generation Films and alleging products liability against Battenfeld Gloucester. Appellee also filed a claim with the Ohio Bureau of Workers Compensation ("BWC") for an award against appellant for violation of a specific safety requirement ("VSSR claim").
 {¶ 7} On February 14, 2008, appellant, appellee, and Battenfeld Gloucester entered a stipulation set forth in pertinent part as follows: "On January 18, 2005, the Plaintiff [Appellee] Ron Bowers was injured while in the course of his employment with Defendant [Appellant] Next Generation Films and as a result of those injuries he is entitled to recover compensatory damages only from Next Generation Films. The jury is to determine the amount of those damages. ***."
 {¶ 8} In addition, the parties stipulated that (1) appellee's VSSR claim was settled, (2) any claims for punitive damages were dismissed with prejudice, and (3) appellee would assign all rights, claims, or interests against Battenfeld Gloucester to appellant.
 {¶ 9} On March 25 and 26, 2008, the case was tried to a jury. After hearing the evidence, the jury awarded appellee the following:
 {¶ 10} $14,094.00 for past economic damages;
 {¶ 11} $30,000.00 for past non-economic damages;
 {¶ 12} $15,000.00 for future economic damages;
 {¶ 13} $30,000.00 for future non-economic damages. *Page 4 
 {¶ 14} On April 16, 2008, appellant filed a motion for new trial or for a judgment notwithstanding the verdict ("j.n.o.v."). On the same day, appellant filed a "motion for credit toward satisfaction of judgment." The court denied both motions on May 5, 2008.
 {¶ 15} On May 1, 2008, appellee filed a motion for prejudgment interest, to which appellant responded on May 6, 2008. The court subsequently overruled the motion for prejudgment interest.
 {¶ 16} Appellant filed a notice of appeal on May 8, 2008. It herein raises the following two Assignments of Error:
 {¶ 17} "I. THE TRIAL COURT ERRED IN ALLOWING PLAINTIFFS (SIC) CLAIMS FOR FUTURE DAMAGES TO GO TO THE JURY AND IN REFUSING TO GRANT A NEW TRIAL OR JNOV WHEN JURY IMPROPERLY AWARDED THOSE DAMAGES.
 {¶ 18} "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT A CREDIT FOR MONEYS ALREADY PAID FOR PLAINTIFFS (SIC) WAGE LOSS AND MEDICAL EXPENSES."
 I. {¶ 19} In its First Assignment of Error, appellant contends the trial court erred in allowing appellee's claims for future damages to go to the jury, and in refusing to grant a new trial or j.n.o.v. on the issue of damages. We disagree.
 {¶ 20} Appellant's arguments focus on the deposition testimony of plaintiff-appellee's witness, Dr. Robert Dawson, an orthopedic surgeon. Appellant maintains that Dr. Dawson's deposition testimony was unreliable and vague, and failed to establish *Page 5 
that future damages, to-wit $30,000.00 for non-economic damages and $15,000.00 for future economic losses, were reasonably likely to occur.
 {¶ 21} Evid. R. 702 reads as follows in pertinent part:
 {¶ 22} "A witness may testify as an expert if all of the following apply:
 {¶ 23} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 24} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 25} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *."
 {¶ 26} We have recognized that a trial judge must perform a "gatekeeping" role to ensure that expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the trier of fact. State v. Wilson, Perry App. No. 05-CA-5, 2005-Ohio-6201, ¶ 25, reversed on other grounds, 109 Ohio St.3d 313, citing Kumho Tire Co.,Ltd. v. Carmichael (1999), 526 U.S. 137, 119 S.Ct. 167, 143 L.Ed.2d 238. Appellant herein relies on Daubert v. Merrell Dow Pharmaceuticals,Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, which set forth four factors for consideration in evaluating the reliability of scientific evidence under the Federal Rules. Although appellant urges in part that the trial court should have excluded Dr. Dawson's testimony as to future damages; we find the essential argument is that the doctor's testimony did not support the award for future damages. *Page 6 
 {¶ 27} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. Peterson v.Peterson, Muskingum App. No. CT2003-0049, 2004-Ohio-4714, ¶ 10, citingCross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. We have applied this standard in the realm of damages issues. See Walser v.Dominion Homes, Inc. (June 11, 2001), Delaware App. No. 00-CA-G-11-035.
 {¶ 28} The record in the case sub judice indicates that appellee was first treated for an ulnar styloid fracture following the workplace accident. Due to continuing pain following treatment for the fracture, appellee was referred to Dr. Dawson, who sub-specializes in problems of the hand and arm. A review of an MRI at that time revealed a tear of the triangular fibrocartilage complex (TFCC). During the deposition of Dr. Dawson, appellant's counsel cross-examined on the need for future surgery on the ulna styloid should appellee's treatment for the TFCC be insufficient:
 {¶ 29} "Q. Okay. Now *** [Plaintiff's Counsel] Mr. Lojewski asked you some questions about the need for the ulnar — to take out the fragment in the ulnar styloid. Just be clear. Do you believe within a reasonable degree of medical certainty that that surgery is indicated at this point in time?
 {¶ 30} "A. Without reevaluating Mr. Bowers, I can't say that it is or is not.
 {¶ 31} "Q. Okay. Based on — based on what you do have, the last time you saw him, and based on — based on the records, can you offer that opinion?
 {¶ 32} "A. I cannot say that I would recommend it or not recommend it based on what I have currently. *Page 7 
 {¶ 33} "Q. So you cannot give us an opinion that the surgery is indicated or that it's not indicated?
 {¶ 34} "A. No." Deposition Tr. at 63-64.
 {¶ 35} Thereafter, on re-direct, appellee's counsel engaged in the following exchange with Dr. Dawson:
 {¶ 36} "Q. Doctor, again, hypothetically, and I believe I asked you this question before . . . if Mr. Bowers continues to have pain and discomfort related to his left wrist, would it be your opinion to a reasonable degree of medical certainty that it has more to do at this point with the non-union of the styloid fracture as opposed to the postoperative condition of his triangular fibro-cartilage?
 {¶ 37} "A. If he has persistent pain in an exam that is as it was when I saw him last, yes.
 {¶ 38} "Q. And to a reasonable degree of medical certainty, if that, in fact, is the case, then surgery would be reasonable and necessary and indicated, correct? [Defendant's counsel objects.]
 {¶ 39} "A. Correct.
 {¶ 40} "Q. And that's to a reasonable degree of medical probability?
 {¶ 41} "A. Yes." Deposition Tr. at 67-68.
 {¶ 42} An award of future damages is limited to damages reasonably certain to occur from the injuries. Stone v. Patarini (June 21, 2000), Lorain App. No. 98CA007242, citing Hammerschmidt v. Mignogna (1996),115 Ohio App.3d 276, 281-282, 685 N.E.2d 281. Thus, a plaintiff's claim for future medical expenses must be supported by evidence that reasonably establishes the amount likely to be incurred for the future *Page 8 
medical treatment. Id. Where the alleged injury is subjective in character, the claimant must present expert evidence as to future pain and suffering or permanence. Kiley v. Tutorow (Oct. 15, 1982), Delaware App. No. 82 CA 13, 1982 WL 3074, citing Day v. Gulley (1963),175 Ohio St. 83. However, without evidence in the record reflecting that the jury was wrongfully influenced or that the award was manifestly excessive or inadequate, a reviewing court may not interfere with a jury's verdict on damages. Nevins v. Ohio Dept. of Transp. (1998), 132 Ohio App.3d 6, 21, citing Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 655.
 {¶ 43} In the case sub judice, Dr. Dawson, although hampered by the fact that he had not seen appellee since March 2007, about one year prior to the trial, did testify to a reasonable degree of medical certainty that additional surgery would be recommended if appellee remained symptomatic. Additional witnesses in the case, namely appellee himself and two former co-workers, filled in any evidentiary gaps by testifying that appellee continued to be symptomatic. Tr. at 26-74, 120-125, 139-143. Furthermore, Dr. Dawson testified as to the estimated cost of future surgery in the range of $15,000.00 to $20,000.00. Deposition Tr. at 38. Finally, the jurors were instructed that they could believe or disbelieve all or any part of the testimony of any witness. Tr. at 191-192. With regard to hypothetical questions presented to the expert, the jurors were instructed that they were to determine if the facts or data on which the expert opinions were based were true. Tr. at 193-194. The jurors were also instructed not to speculate as to future damages, and that they were to consider future damages only from those things they found were reasonably certain to continue, based on a preponderance of the evidence. Tr. at 196-197. *Page 9 
 {¶ 44} Upon review, we are unpersuaded the trial court erred in allowing appellee's claims for future damages to go to the jury, and in refusing to grant a new trial or j.n.o.v. on the issue of damages.
 {¶ 45} Appellant's First Assignment of Error is overruled.
 II. {¶ 46} In its Second Assignment of Error, appellant contends the trial court erred in denying a credit against the judgment amount for moneys previously paid by BWC for appellee's wage loss and medical expenses. We disagree.
 {¶ 47} The general rule in Ohio concerning moneys received from independent sources by a plaintiff in a tort action is encapsulated in the "collateral source rule." The Ohio Supreme Court has held: "The collateral source rule is an exception to the general rule of compensatory damages in a tort action, and evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act." Pryor v. Webber (1970), 23 Ohio St.2d 104, 263 N.E.2d 235, paragraph two of the syllabus.
 {¶ 48} Appellant nonetheless appears to propose that since it pays premiums under Ohio's workers compensation program, it should have been entitled to a credit on the judgment representing payments made by BWC to the claimant, i.e., appellee.[1] We note appellant cites case law addressing exceptions to the aforecited collateral source rule regarding moneys paid on behalf of tort defendants by private insurers, but provides nothing on point as to cases specifically involving the BWC. *Page 10 
 {¶ 49} R.C. 4123.931, a section of Ohio's workers compensation statutory scheme, governs subrogation rights. It reads in part as follows:
 {¶ 50} "(A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of recovery in favor of a statutory subrogee against a third party, and the statutory subrogee is subrogated to the rights of a claimant against that third party. The net amount recovered is subject to a statutory subrogee's right of recovery. ***"[2]
 {¶ 51} Furthermore, R.C. 4123.931 (I)(3) states the statutory subrogation right of recovery applies to, but is not limited to "*** [a]mounts recoverable from an intentional tort action."
 {¶ 52} The basis for the trial court's denial of any credit to the judgment was based on the subrogatory interest held by the BWC in an intentional tort action. Appellant's challenge thereto is two-fold: First, that appellant did not stipulate to the existence of an intentional tort; secondly, that BWC is entitled only to a partial recoupment of the net amount recovered by a claimant, based on the formulas set out in R.C. 4123.93(E) and R.C. 4123.931.
 {¶ 53} In regard to the first challenge, we find the intentional tort action was the only claim appellee had against his employer in this case outside of the workers compensation process; even though the parties' stipulation avoided a jury finding of intentional tort, the case remained an intentional tort action for all intents and purposes. In regard to the second challenge, even though BWC may not always be entitled to "full" *Page 11 
recovery under statutory subrogation, under the facts and circumstances of this case, we are compelled to adhere to the Ohio Supreme Court's "long-established position of giving a liberal interpretation to the Workers' Compensation Act in favor of the injured worker." State ex rel.General Refractories Co. v. Industrial Com'n of Ohio (1989),44 Ohio St.3d 82, 83-84, 541 N.E.2d 52, citing R.C. 4123.95.
 {¶ 54} We therefore find no reversible error in the trial court's denial of a credit against the judgment amount for monies previously paid for appellee's wage loss and medical expenses. Appellant's Second Assignment of Error is overruled.
 {¶ 55} For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
Wise, J. Hoffman, P. J., and Delaney, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Costs assessed to appellant.
[1] Appellant did not otherwise introduce evidence at trial regarding payments made on appellee's medical bills which the providers accepted as full payment, or made adjustments thereto.
[2] Pursuant to R.C. 4123.93(B), the term "`[statutory subrogee' means the administrator of the bureau of workers' compensation, a self-insuring employer, or an employer that contracts for the direct payment of medical services pursuant to division (L) of section 4121.44
of the Revised Code." *Page 1