**NOTT et al., Appellants,**

v.

**HOMAN, Appellee.**

[Cite as *Nott v. Homan* (1992), 84 Ohio App.3d 372.]

Court of Appeals of Ohio,
Mercer County.

No. 10–92–10.

Decided Dec. 17, 1992.

*Philip M. Collins & Assoc., Philip M. Collins* and *John T. Ryerson, Jr.,* for appellants.

*Gooding, Huffman, Kelley & Becker* and *Lawrence A. Huffman,* for appellee.

SHAW, Judge.

Plaintiffs-appellants, Willis Clapper and Judy Nott, appeal the judgment of the Mercer County Court of Common Pleas, following a jury trial in the personal injury action brought by plaintiffs against defendant-appellee, Deanna Homan.

On December 29, 1988, a van driven by plaintiff Clapper, in which plaintiff Nott was a passenger, was involved in an accident with a car driven by defendant, at the intersection of U.S. 127 and S.R. 119 in Mercer County.

On September 28, 1990, plaintiffs filed suit against defendant, alleging that defendant's negligence caused the accident and seeking damages for the resulting injuries. On May 30, 1991, the parties stipulated that defendant was solely liable. A jury trial on the issue of damages only was held on November 6 and 7, 1991. The jury returned a verdict of $10,000 for Nott and a verdict of $11,500 for Clapper.

Defendant then filed a motion to reduce the verdicts by the amount of any collateral benefits received, pursuant to R.C. 2317.45. On March 17, 1992, the trial court issued a judgment entry journalizing the verdicts. Finding that R.C. 2317.45 mandated such action, the court reduced Nott's award by $2,282.05 and reduced Clapper's award by $5,357.15. A mistake in the entry relating to the source of benefits received by Clapper was corrected by a *nunc pro tunc* entry filed March 23, 1992, but the reduced judgments, as journalized March 17, 1992, remained unchanged.

Plaintiffs thereafter brought the instant appeal, raising the following two assignments of error:

"I. The court erred in refusing to give the jury an instruction that they should not consider any possible collateral or third-party sources of payment available to plaintiffs relative to their damages.

"II. The court erred in reducing the judgment for the plaintiffs under the terms of R.C. Section 2317.45(B)."

The plaintiffs' assignments of error both relate to R.C. 2317.45. This statutory section, which is set forth in detail, *infra,* abrogates the common-law collateral source rule in many Ohio tort actions.

In their first assignment of error, plaintiffs argue that the trial court erred in denying plaintiffs' request that the court give the following jury instruction, based on the language of R.C. 2317.45(B)(3):

"The jury shall not consider any possible collateral or third-party sources of payment available to plaintiffs relative to their damages."

R.C. 2317.45(B)(3) provides:

"Except as provided in division (B)(1) of this section, in another section of the Revised Code, or in the Rules of Evidence, evidence of collateral benefits is not admissible in a tort action and shall not be submitted to or considered by the trier of fact in determining whether to award compensatory damages to a plaintiff in a tort action or in determining the amount of any such damages."

Plaintiffs contend that evidence of collateral benefits was impermissibly submitted to, and considered by, the jury. Specifically, several records documenting the plaintiffs' injuries and their medical expenses were attached to copies of insurance claim forms. Thus, plaintiffs assert, the trial court erred in failing to issue the requested "curative" instruction.

As noted by the plaintiffs, Ohio's General Assembly has recognized that evidence of collateral benefits received by a plaintiff could alter the jury's perception of a plaintiff's damages, and could substantially and unfairly reduce an award for damages suffered. Therefore, R.C. 2317.45(B) precludes the admission of such evidence, in order to protect tort action plaintiffs.

In the case before us, however, it was the plaintiffs who introduced the evidence of collateral benefits. In particular, plaintiffs complain that their own Exhibits 8 and 10 were the ones which necessitated the "curative" instruction they proposed.

A well-established principle of appellate review is the "invited error" doctrine. "[A] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 31 OBR 587, 511 N.E.2d 106. See, also, *State v. Combs* (1991), 62 Ohio St.3d 278, 288, 581 N.E.2d 1071, 1080; *State v. Seiber* (1990), 56 Ohio St.3d 4, 17, 564 N.E.2d 408, 422; 5 Ohio Jurisprudence 3d (1978) 97, Appellate Review, Section 543 *et seq.*

The plaintiffs argue that the references to collateral benefits contained within the medical records comprising plaintiffs' Exhibits 8 and 10 are so intertwined with other data in the medical records that it was not feasible to edit or separate the records. Accordingly, the plaintiffs assert, they did not invite or induce the error.

After a complete review of the exhibits in question, we must disagree. The testimony of the treating physicians was admitted into evidence at trial, alleviating much of the need to present the same information again in the form of medical records. Furthermore, much of the information contained in the insurance forms is repetitious of that found elsewhere in the medical records. Finally, the combination of the medical information and the insurance information is such that extraction or separation appears not only possible but, in some instances, as easy as removing a staple.

Therefore, we find that the plaintiffs did induce or invite the error of which they now complain. Accordingly, on the basis of the invited error doctrine, the plaintiffs' first assignment of error is overruled.

In their second assignment of error, the plaintiffs argue that the trial court erred in reducing the judgment rendered in favor of Willis Clapper. Specifically, the plaintiffs assert that R.C. 2317.45 is not applicable to the facts of this case.

At trial, Clapper sought compensatory damages for medical expenses, pain and suffering, and lost wages. The jury, as noted, returned a general verdict awarding him $11,500. As Clapper had received $5,357.15 in disability benefits for lost wages in which the payor insurance company had no right of subrogation, the trial court reduced Clapper's judgment by $5,357.15, pursuant to R.C. 2317.45.

The dispute here stems from the fact that the verdict was a general one and did not specify whether the jury was compensating Clapper for medical expenses, for pain and suffering, for lost wages, or for some combination thereof. For this reason, Clapper argues that R.C. 2317.45 should not apply. He asserts that it is inequitable to reduce his judgment, as the award he received may have been purely for medical expenses and/or pain and suffering.

In resolving this dilemma, we look first to the language of R.C. 2317.45, which provides in relevant part:

"(B)(1) * * * if a plaintiff in a tort action is entitled to an award of compensatory damages, that plaintiff shall disclose to the court after such entitlement is determined all relevant collateral benefits, all rights of recoupment relative to the disclosed collateral benefits, and the costs, premiums, or charges for any of the disclosed collateral benefits paid or contributed within the three-year period immediately preceding the accrual of the cause of action, by the plaintiff, any member of his immediate family, or the employer of the plaintiff or any member of his immediate family * * *.

"(2) Upon the disclosure required by division (B)(1) of this section, the court shall do all of the following:

"(a) Determine whether both of the following are satisfied in relation to any of the disclosed collateral benefits:

"(i) The plaintiff has received the disclosed collateral benefit or is reasonably certain to receive it within the next sixty months after the entry of judgment;

"(ii) There are no rights of recoupment respecting the disclosed collateral benefit.

"(b) As to any disclosed collateral benefits in relation to which both requirements of division (B)(2)(a) of this section are satisfied, determine the total costs, premiums, or charges for such benefits paid or contributed within the three-year period immediately preceding the accrual of the cause of action, by the plaintiff,

any member of his immediate family, or the employer of the plaintiff or any member of his immediate family * * *;

"(c) Prior to entering judgment for the plaintiff, do both of the following:

"(i) Subtract from the compensatory damages that the plaintiff otherwise would be awarded the amount of any disclosed collateral benefits in relation to which both requirements of division (B)(2)(a) of this section are satisfied;

"(ii) Subject to the limitation specified in this division, add to the balance derived under division (B)(2)(c)(i) of this section the total of any costs, premiums, and charges described in division (B)(2)(b) of this section. The amount of those costs, premiums, and charges that is added to that balance shall not exceed any amount subtracted pursuant to division (B)(2)(c)(i) of this section from the compensatory damages that the plaintiff otherwise would be awarded."

The definitions for the key terms used in the statute are found in R.C. 2317.45(A)(1), which provides in relevant part:

"(a) 'Collateral benefits' means benefits that a plaintiff has received, or may be entitled to receive within the next sixty months after the entry of judgment, as a result of an injury, death, or loss to person or property that is a subject of a tort action, from any of the following:

"(i) The government of the United States, or any state or any political subdivision of any state, under a program that provides medical, hospital, sickness, dental, or other health benefits, including, but not limited to, social security, medicare, and medicaid;

"(ii) A federal, state, or political subdivision of a state disability income or workers' compensation program, or a wage continuation program, of an employer;

"(iii) A medical, hospital, sickness, dental, or other health insurance program;

"(iv) An accident insurance program that provides medical, hospital, sickness, dental, or other health benefits;

"(v) A contract or agreement under which medical, hospital, sickness, dental, or other health services are provided or under which the cost of those services are paid for or reimbursed.

"(b) 'Rights of recoupment' means rights of recoupment through subrogation, trust agreement, contract, lien, operation of law, or otherwise.

"(c) 'Tort action' means a civil action for damages for injury, death, or loss to person or property. * * *

"(d) 'Trier of fact' means the jury or, in a nonjury action, the court."

We find nothing in the statute requiring that damage awards be categorized. Moreover, the statute does not provide that damages be reduced only

upon proof that the damages and the collateral benefits at issue compensate the same injury or loss. Rather, the statute simply requires that compensatory damages be reduced by the net sum of collateral benefits received, or reasonably certain to be received, if the collateral benefits fall under one of the five stated categories and if there is no right of recoupment respecting the benefits. We note, too, that the language is mandatory. Thus, a trial court is given no discretion in reducing a judgment when the statutory criteria are met.

Additionally, where there is only a general verdict with no interrogatories, a reviewing court is authorized to infer that the jury found on all the issues in favor of the successful, and against the unsuccessful, party. *Berisford v. Sells* (1975), 43 Ohio St.2d 205, 72 O.O.2d 117, 331 N.E.2d 408; *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496. In this regard, we note also that the plaintiffs could have requested jury interrogatories. Civ.R. 49. Had interrogatories revealed that Clapper was indeed awarded no damages for lost wages, then his argument on appeal might be strengthened in this respect. However, as Clapper was in the best position to have corrected the indeterminate nature of the general verdict at the trial court level, and did not do so, we do not believe that we can now speculate on appeal as to the particular damages compensated by the jury award.

In light of these considerations, plaintiffs' second assignment of error is overruled and the judgment of the Court of Common Pleas of Mercer County is affirmed.

*Judgment affirmed.*

HADLEY, P.J., and THOMAS F. BRYANT, J., concur.