OPINION
{¶ 1} This appeal involves insurance coverage arising out of a rear-end automobile collision caused by an uninsured motorist. Appellants, Mary Douglas and Melvina Jordan, had uninsured motorists coverage ("UM") under an automobile insurance policy issued by Appellee Westfield Insurance Company ("Westfield"). Westfield denied coverage, and Appellants sued the tortfeasor and Westfield. The case went to jury trial, and Mary and Melvina were awarded a combined monetary judgment of $13,700. Westfield subsequently requested that the trial court deduct from the award the amounts of all medical bills that were paid by other insurers, such as Anthem Blue Cross Blue Shield ("Anthem"). The trial court granted Westfield's motion and deducted $10,926.61 from Mary Jordan's award, and $1,385.32 from Melvina Jordan's award, leaving a balance of $1,388.07 to be awarded to Mary and Melvina. Appellants are now challenging the setoff the trial court deducted from the jury verdict.
 {¶ 2} It is clear from the record that the jury was presented with both the original medical bills and the amounts paid by third party providers such as Anthem. The trial court gave no instruction to the jury explaining the significance of collateral source payments or explaining that the court would be making a post-verdict setoff, even though Appellants requested such an instruction. No interrogatories were ordered by the court or offered by Appellee. The jury then returned general verdicts in favor of Appellants Mary and Melvina Jordan. The record does not indicate any *Page 3 
reasonable grounds for deducting a setoff from the general verdict in favor of the plaintiffs. If the trial court intended to deduct collateral source benefits from that general award, it needed to make sure there was some basis established in the record for the setoff, such as providing a jury instruction or other explanation to the jury as regards the amount that would ultimately be included in this setoff. The record does not show any factual or legal basis for deducting a setoff from the jury award, and it should not have been allowed. The judgment entry deducting a setoff for collateral source payments is reversed, and the original jury award is reinstated.
 FACTS {¶ 3} On December 10, 2000, Ronald L. Patterson negligently operated his motor vehicle so that it collided into the rear of a car operated by Douglas Jordan. Mr. Patterson was uninsured. Mary and Melvina Jordan were passengers in Douglas Jordan's vehicle at the time of the accident. Appellants Douglas, Mary and Melvina Jordan were provided UM coverage under an automobile insurance policy issued by Westfield. Westfield denied UM coverage, and on May 1, 2002, Appellants filed a complaint against the tortfeasor for negligence, and against Westfield for UM benefits. Appellants also named Anthem as a defendant due to possible subrogation rights relating to medical bills paid by Anthem.
 {¶ 4} Westfield admitted both coverage and liability for the accident, but disputed proximate cause as to all the claimed injuries and medical expenses. During the pendency of the case, Westfield settled Anthem's subrogation claim, and Anthem was dismissed as a defendant. The case was set for jury trial. On *Page 4 
November 11, 2004, Appellants filed proposed jury instructions regarding collateral source payments of medical expenses. The proposed jury instructions instructed the jury to disregard any collateral source payments in making their determination because the trial court, and not the jury, would deduct those payments after trial. The court rejected Appellants' jury instruction. The trial court decided to provide a general instruction on damages that said nothing about collateral source payments and nothing about the fact that the court itself would be subtracting collateral benefits from any jury award. The trial court did not order and Appellee did not provide jury interrogatories as regards this issue.
 {¶ 5} The jury returned general verdicts in favor of Appellants Mary and Melvina Jordan in the amounts of $12,000 and $1,700 respectively, while the jury found in favor of Westfield regarding Douglas Jordan's claims. The court filed a judgment entry on November 16, 2004, granting judgment in favor of Mary Jordan for $12,000, and for Melvina Jordan for $1,700. This judgment entry was not timely served on the parties.
 {¶ 6} Westfield subsequently filed a motion for setoff for collateral benefits paid by Anthem and for other payments it made directly to Appellants. A hearing was held on December 21, 2005, but no evidence was presented. The trial court's judgment entry of December 23, 2005, noted that Appellants' counsel did not dispute the alleged setoff at the hearing, but the court gave both parties more time to submit further evidence and legal arguments. *Page 5 
 {¶ 7} On January 4, 2006, Westfield filed a supplemental brief. Westfield argued that Anthem satisfied $6,029 worth of Mary Jordan's medical bills, and $209 of Melvina's medical bills. Westfield argued that these sums constituted collateral benefits to Appellants that should be deducted from the jury award. Again, no evidence was submitted to establish the accuracy of these requested offsets. Westfield also claimed that it had entered into a settlement with Anthem that satisfied all of Anthem's subrogation claims. No evidence was submitted to prove the existence of the terms of this settlement. Westfield further argued that it had provided direct payments totaling $4,897.61 for medical expenses on behalf of Mary Jordan, and $1,076.32 in payments for medical expenses for Melvina Jordan. Once again, no evidence was offered to prove these amounts.
 {¶ 8} Appellants filed a brief in opposition, arguing that it had opposed any setoff at trial unless proper jury instructions were given concerning collateral source payments and the setoff. Appellants also argued that even if a setoff were allowed, Westfield's claim for setoff was much too high because Anthem only paid a fraction of the medical bills. Appellants argued that a large portion of these bills were written off as a loss by the medical providers. Appellants argued that, at most, the setoff (if any) should be $1,700, which is the amount Westfield allegedly paid to Anthem to settle Anthem's subrogation claims. Appellants reminded the court that even this amount was speculative, because no settlement agreement was in evidence to establish the purported value of the claimed setoff. *Page 6 
 {¶ 9} The trial court accepted Westfield's argument, and on May 26, 2006, the court filed a judgment entry that allowed deduction of the full requested setoff from the jury verdict, reducing Mary Jordan's award to $1,073.39 and reducing Melvina Jordan's award to $314.68. Appellants filed a motion for a new trial, which was overruled on December 12, 2006. Copies of the judgment were not mailed until January 16, 2007, and this timely appeal followed on January 30, 2007.
 {¶ 10} A full trial transcript was not ordered for this appeal. A partial transcript of the jury instruction phase of the trial is part of the record. The transcript of the December 21, 2005, hearing dealing with Westfield's request for setoffs is not part of the record.
 {¶ 11} Westfield filed a motion to dismiss the appeal as untimely, due to the fact that the trial court entered judgment on the jury verdict on November 16, 2004, and no appeal was filed of that judgment within 30 days as required by App.R. 4. On March 21, 2007, this Court determined that the appeal was timely because the trial court's own docket indicates that it failed to send timely notice to the parties of the November 16, 2004, judgment. Without a record that notice was timely sent, the time for filing an appeal had not yet expired. It should be made clear, though, that it is not the November 16, 2004, judgment that is the subject of this appeal. This appeal involves the entry filed on May 26, 2006, which deducted the setoff from the jury verdict, and contained the denial of Appellants' motion for a new trial filed on December 12, 2006. The filing of the motion for new trial tolled the time to file a notice of appeal of the May 26, 2006, judgment. See App.R. 4(B)(2). There does not *Page 7 
appear to be any issue raised as to the timeliness of the motion for new trial. The trial court sent notice on January 16, 2007, of the judgment overruling the motion for a new trial. The notice of appeal was filed within 30 days of the service of notice of the judgment, as required by App.R. 4(A), and is therefore, timely.
 ASSIGNMENTS OF ERROR NOS. 1 AND 3 {¶ 12} "The Trial Court committed reversible error in refusing to charge the jury as to the legal effect of collateral sources for the payment of medical expenses."
 {¶ 13} "The Trial Court committed reversible error in setting off and deducting from the jury verdicts the entire amount of bills submitted to the first party medical insurance company for payment."
 {¶ 14} These two assignments of error are integrally related, mostly because of the overlap of legal principles between the two. Appellants first argue that it was prejudicial error for the trial court to fail to advise the jury to disregard any collateral source payments when determining Appellants' damages. Appellants contend that the "collateral source rule" required the judge to explain to the jury the significance of collateral source benefits. Appellants further argue that the jury should have been made aware that the judge was going to deduct collateral source benefits. According to Appellants, the result of the judge's error was that Westfield was given a double deduction of the amounts paid by Anthem. Appellants argue that, even if the jury instructions were not in error, Westfield should only have been permitted to take a credit for the amounts Anthem actually paid, which was much less than the original invoiced amounts for medical care. Appellants urge that they should have been the *Page 8 
ones to benefit from the amounts that were written off as a loss when Anthem satisfied the bills for less than their face amount. In either case, Appellants contend that the trial court gave a tremendous windfall to Westfield that is not warranted by law or by the facts of this case. Because Appellants are correct that the trial court had no factual basis for granting any amount of setoff, Appellants' alternative argument, while also correct, is moot.
 {¶ 15} At the outset, we note that the parties spend most of their energies arguing as to the relevance and use of the "collateral source rule." In fact, Appellants base many of their contentions on this rule, which is found in both statute and common law. From the record, it also appears that the trial court relied on this rule. However, as we will discuss later, the actual collateral source rule applies to actions sounding in tort and not, as here, to a contract action. This has caused needless confusion and complication in this matter. That said, the reasons behind allowing an insurance company to recoup collateral benefits from its insured are directly analogous to the reasoning behind the collateral source rule and, as such, while this analogy could not form the legal basis for the trial court's decision on the motion of Appellee, the analogy is important to an understanding of why and to what extent the court erred, here.
 {¶ 16} Turning now to the substance of Appellants' argument here, Appellants' proposed jury instruction reads as follows:
 {¶ 17} "As to the medical bills which will be submitted to you for your consideration in this case, you are to consider as compensatory damages only those *Page 9 
charges for medical treatment which you find are reasonable and necessary and which are directly and proximately related to the automobile collision. As to the amount of such charges, a bill from a medical provider is prima facia [sic] evidence of the reasonableness of any charges or fees stated therein. You are not to reduce the amount of such charges stated in said bill by any amount which may have been paid by any other collateral source, such as a medical insurance provider. This Court will deduct any such collateral source payments from any verdict you may reach after your [sic] render your verdict." (11/12/04 Proposed Jury Instruction.)
 {¶ 18} The trial court rejected Appellants' jury instruction, and gave the following as its actual charge to the jury:
 {¶ 19} "In determining each individual Jordan's damages, you should consider an amount that will fully and fairly compensate them for each of the following categories of damage that the accident of December 10th, 2000, proximately caused them to sustain.
 {¶ 20} "First, any partial physical disability, emotional distress, and impairment of ability to participate in and enjoy daily activities, which the injury proximately caused them to the present time.
 {¶ 21} "Second, any pain and suffering, physical disability, emotional distress and impairment of their ability to participate in and enjoy daily activities which the injury will cause them in the future with reasonable certainty.
 {¶ 22} "Third, any loss of earnings or earning capacity that the injury has caused them to the present. *Page 10 
 {¶ 23} "Fourth, any loss of earnings or earning capacity that the injury will cause them to sustain in the future which are reasonably certain.
 {¶ 24} "Fifth, any reasonably necessary expenses for hospital or medical care that the injury has caused them to the present.
 {¶ 25} "Six, any reasonably necessary expenses for hospital or medical care that the injury will cause them to sustain in the future with reasonable certainty." (11/8/04 Tr., pp. 15-16.)
 {¶ 26} While not using the most articulate of arguments, in this appeal Appellants contend that because the court failed to instruct the jury about the manner in which they were to handle the collateral source payments from Anthem, it was impossible for the court to later deduct a setoff, because the jury may have and most likely did deduct those collateral benefits in making its ultimate determination as to damages. Appellants argue that a collateral source instruction would have corrected the error, but since no instruction was given, the jury verdict should stand.
 {¶ 27} As earlier noted, there is considerable discussion from both parties concerning collateral source benefits and the "collateral source rule." The collateral source rule was primarily established in Pryor v.Webber (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235. "The collateral source rule is an exception to the general rule of compensatory damages in a tort action, and evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act." Id at paragraph two of the syllabus. The collateral source rule is, therefore, a rule of evidence. The rule *Page 11 
prevents the jury from learning about a plaintiff's income from sources other than the tortfeasor so that a tortfeasor is not given an advantage from third-party payments to the plaintiff. Id. at 108.
 {¶ 28} Effective April 7, 2005, the General Assembly passed R.C.2315.20, changing the collateral source rule in Ohio. Am. Sub. S.B. No. 80 (2005). This statute now allows the defendant in any tort action to introduce, "evidence of any amount payable as a benefit to the plaintiff as a result of the damages that result from an injury * * *." The trial in the instant case took place before the enactment of R.C. 2315.20, and thus, this change would have no effect.
 {¶ 29} One difficulty with Appellants' argument is that in a traditional tort action the collateral source rule is designed to prevent evidence from being introduced at trial. In this case, however, the plaintiffs introduced all the medical bills (including the bills paid by Anthem) at trial, and then sought to invoke the collateral source rule during the determination of jury instructions. Initially, Westfield contends that Appellants have waived any error regarding the jury consideration of collateral sources because Appellants actually introduced the evidence, citing Nott v. Homan (1992),84 Ohio App.3d 372, 616 N.E.2d 1152. Westfield would be correct if Appellants were only interested in having the jury verdict overturned, but in these two assignments of error Appellants are content with the verdict but allege that error occurred in the setoff from the jury award, post-verdict. They are not, in these two assignments, challenging the jury verdict itself. Assuming for purposes of this argument that Westfield is correct that there is no basis to overturn the jury verdict, *Page 12 
this does not impact Appellants' real argument that the setoff for bills paid by Anthem was error because the jury was never told in any fashion when coming to a decision as to the amount of damages that the award would be reduced after trial. While Appellants tend to overstate their position, this is the crux of their appeal, and it is persuasive.
 {¶ 30} First, neither party can explain what authority the trial court had for essentially overturning a valid jury verdict and reducing it by 90% based on setoffs arising from facts that were already part of the evidence presented to the jury. Neither the parties nor the court explains whether the requested setoffs were made due to some unnamed contract provision, a statute, a rule of court, or on some other basis. Again, as we will explain, the collateral source rule applies only to a tort action. Since Appellants are suing their insurer (albeit because of a tort) this is a contract action. The Westfield auto insurance contract is not in the record, however, so it cannot be the purported basis for making the setoffs. If the trial court had some other legal basis for attempting to eliminate what it apparently perceived to be an overly generous jury award, the court was required to have some factual basis for concluding that the jury verdict was in error and needed to be corrected. At the very least, if Appellee sought to have the court setoff from the jury award amounts Appellants received, jury interrogatories could have been prepared and submitted to reflect the manner in which the jury calculated the damage award. The record in this case reflects no factual basis for the court to conclude that the jury had not already calculated the setoff. The record does not show that there was any collateral benefit *Page 13 
to be deducted from the jury award. Hence, it was error for the court to order the deduction of the setoff.
 {¶ 31} No matter what basis the court may have used to determine if setoff was proper, it is instructive to note that the Ohio Supreme Court held that a former statute requiring trial courts to make post-verdict setoffs for collateral source benefits, R.C. 2317.45, was unconstitutional, because it did not take into account whether the jury may have already deducted those benefits as part of its verdict:
 {¶ 32} "However, with respect to the goal of R.C. 2317.45 of eliminating double recoveries, the means employed in the statute to attain the goal are both irrational and arbitrary. Of primarysignificance is that the statute requires deductions from jury verdictsirrespective of whether a collateral benefit defined in R.C.2317.45(A)(1) is actually included in the verdict. While the goal of preventing double recoveries is not arbitrary or unreasonable, as the majority held in Morris, supra, R.C. 2317.45 fails to take into account whether the collateral benefits to be deducted are within the damages actually found by the jury, especially where there are no interrogatories to quantify the categories of damages that make up the general verdict. Thus, the statute can arbitrarily reduce damages that a jury awards a plaintiff, since under the statute it is irrelevant whether any collateral benefit actually represents any portion of the jury's award. In the case of Mrs. Sorrell, R.C. 2317.45 arbitrarily and unreasonably eliminated her entire jury award, since her workers' compensation benefits exceeded the jury verdict of damages, notwithstanding that workers' compensation pays nothing for pain and suffering. *Page 14 
 {¶ 33} "* * *
 {¶ 34} "* * * R.C. 2317.45 does not accord due process to tort victims under either the strict scrutiny or rational basis test, and therefore we hold that it violates the Due Process Clause found in Section 16, Article I of the Ohio Constitution." (Emphasis added.) Sorrell v.Thevenir (1994), 69 Ohio St.3d 415, 423-424, 633 N.E.2d 504.
 {¶ 35} The Ohio Supreme Court has expressed the same sentiment in other cases: "[W]e have consistently and repeatedly held that due process permits deductions for collateral benefits only to the extent that the loss for which the collateral benefit compensates is actually included in the award." Holeton v. Crouse Cartage Co. (2001),92 Ohio St.3d 115, 122, 748 N.E.2d 1111. "[T]he one inexorable source of agreement seems to be that there shall be no constitutionality without a requirement that deductible benefits be matched to those losses actually awarded by the jury." Buchman v. Wayne Trace Local School Dist. Bd. ofEdn. (1995), 73 Ohio St.3d 260, 269, 652 N.E.2d 952.
 {¶ 36} The concern expressed in Sorrell is the same concern that Appellants are expressing in this appeal. A judge cannot make a deduction from the jury award based only on an assumption that the jury failed to make the proper setoff as part of the award of damages. Whether the trial court had some authority on which it relied to order the setoff, the generalized jury instructions and the general verdict made it impossible to tell how the jury handled the medical bills and the collateral source payments. We certainly recognize that the trial court was under no obligation to *Page 15 
accept the proposed instruction requested by Appellants and that there appears to be no standard instruction available to address this exact situation. The trial court's other option in this situation was to order Appellee to prepare interrogatories for the jury. No interrogatories were ordered and the trial court refused to fashion an appropriate instruction. Since the court did not tell the jury to disregard the collateral benefits paid by Anthem, and since the court did not tell the jury that any collateral benefits would be deducted after the trial, it must be presumed absent any evidence to the contrary that the jury considered the payments made by Anthem or any other collateral source and adjusted its verdict accordingly. In any event, this lack of clarity of the verdict was not caused by Appellants, since they provided the court with a proposed jury instruction that would have eliminated the confusion, and they had no duty to prepare jury interrogatories since it was Appellee who desired a setoff.
 {¶ 37} Westfield presents a number of arguments in rebuttal, but most of them avoid the main thrust of Appellants' issue on appeal. Westfield contends that the proposed jury instruction was not an accurate statement of the law because it is not part of the standardized jury instruction in personal injury cases. While we recognize the court was not forced to accept the proposed instruction, the mere fact that it was not a standardized instruction does not mean that it was an inaccurate statement of the law. Whether or not a jury instruction conforms to boilerplate jury instruction language is largely irrelevant because the instructions need to fit the facts and circumstances of each specific case: "[a] charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made beforethe *Page 16 jury by the proof adduced." (Emphasis added.) Marshall v. Gibson (1985),19 Ohio St.3d 10, 12, 482 N.E.2d 583.
 {¶ 38} Westfield also argues that Appellants waived any error regarding the collateral benefits because they introduced the collateral source evidence at trial and because Appellants' attorney stipulated to the amounts that were to be setoff. Although the record in this case is somewhat limited, it is clear from the record that Appellants did not waive the issue now under appeal. The fact that Appellants presented all the medical expense evidence to the jury, including the fact that Appellants received payments from a collateral source, only indicates that Appellants were willing to take the risk that the jury might deduct these benefits from the damages award. Presenting evidence to a jury that could have properly been excluded waives any alleged errors based on the jury's consideration of that evidence, but it cannot be interpreted as a waiver of error that occurred after the verdict.
 {¶ 39} While there is no written stipulation in the record, assuming arguendo that Appellants' counsel did stipulate at trial, as Westfield contends, that the payments from Anthem should be setoff from the verdict, the record reflects that any such stipulation was made in the context and conditioned on the requirement that Appellants would also have the court agree to a jury instruction informing the jury not to, themselves, make the setoff. If we were to accept Westfield's argument, we would have to find that Appellants' counsel stipulated that the jury could consider and setoff the collateral benefits, and also stipulated that the trial court would setoff the *Page 17 
amounts a second time after trial. This is an absurd proposition and is clearly contradicted in the record as evidenced by Appellants' proposed jury instructions.
 {¶ 40} Westfield also appears to argue that Appellants' counsel either stipulated to the setoff, or failed to object to it, at the December 21, 2005, post-verdict hearing. That hearing transcript is not in the record, and an appellant has the duty to provide all portions of a transcript necessary for review of its appeal. Since Westfield is using the hearing as a rebuttal argument, however, it may be incumbent upon Westfield to include this hearing transcript in the record. Regardless, the trial court's journal entries give an indication of what happened at the hearing and afterward and a full transcript is unnecessary to our review of this argument. The trial court's December 23, 2005, judgment entry indicates that no evidence was presented, but that, "[b]asically Attorney Kaufmann [Appellants' counsel] did not dispute the requested set-off alleged by Attorney Pelini." Clearly, this was not to be the end of the matter, however. In the same judgment entry, the court permitted the parties to submit evidence and to make additional arguments and objections to supplement the hearing: "Attorney Pelini is given until January 4, 2006 to file a summary of the requested set-offs and Attorney Kaufmann shall reply, if desired, by January 13, 2006."
 {¶ 41} On January 4, 2006, Westfield's attorney filed a post-hearing brief, but did not attach any evidence to support its claim for setoffs. In the brief, Westfield merely repeated its request for the amounts that were sought but unsubstantiated in the earlier hearing. Appellants' attorney responded on January 10, 2006, and *Page 18 
objected to any setoffs being granted, raising arguments very similar to those now being asserted on appeal. It is clear that the trial court did not consider the December 21, 2005, hearing to have terminated the proceedings relative to setoffs, and both parties later supplemented the record, as specifically permitted by the trial court. Appellants' timely objections to the setoffs are part of the record. There was no waiver or stipulation on this issue.
 {¶ 42} Westfield contends that none of Appellants' citations to collateral source law support Appellants' argument because they involve keeping the evidence of collateral source payments from the jury, not the procedure to be followed once the plaintiff reveals collateral source evidence to the jury. More importantly, Westfield argues that the collateral source rule does not apply at all to this case because it arises only in tort cases, whereas this case is a contract case involving the UM benefits to be awarded pursuant to a policy of insurance. As noted earlier, Westfield is correct that the collateral source rule is an evidentiary rule arising out of tort law and applies only in tort cases. Roberts v. State Farm Mut. Auto. Ins. Co.,155 Ohio App.3d 535, 2003-Ohio-5398, 802 N.E.2d 157. Westfield is also correct that the collateral source rule does not directly apply in a UM case, because UM benefits arise as a matter of contract law, not tort law. "[T]he legal basis for recovery under the uninsured motorist coverage of an insurance policy is contract and not tort." Kraly v. Vannewkirk
(1994), 69 Ohio St.3d 627, 632, 635 N.E.2d 323. Westfield concludes, then, that either party was perfectly free to introduce to the jury any evidence they chose with respect to payments from a collateral source which *Page 19 
benefited the plaintiffs. Once again, though, Westfield fails to grasp the nature of the trial court's error in this case. Simply because there was no bar to prevent any party in this matter from presenting to the jury all the evidence of Anthem's collateral source payments, it is still impossible to determine from this record how much of those collateral benefits were or were not already deducted by the jury in making its award. Hence, while the collateral source rule may not, itself, directly apply to this setoff of collateral source benefits, the distinction between tort law and contract law does not help Westfield, here.
 {¶ 43} For example, in Roberts v. State Farm Mut. Auto. Ins. Co.,155 Ohio App.3d 535, 2003-Ohio-5398, 802 N.E.2d 157, the Second District Court of Appeals held that the collateral source rule does not apply to a UM claim. The victim was covered by two insurance policies with UM coverage. State Farm paid the full $100,000 UM benefit under the personal auto policy, and a trial was held to determine if benefits were due under the employer's auto insurance policy. The jury awarded $92,000 to the insured and the trial judge ordered a posttrial setoff of $100,000 for the amount already paid by State Farm. The trial court's setoff was upheld on appeal based on contract law, but a crucial part of the appellate court's reasoning was that, "the jury did not receive evidence regarding the collateral source payment by State Farm to the Robertses, so it did not consider the State Farm payment in determining the amount of damages owed to Roberts." Id. at ¶ 71. Because the jury in the Roberts case did not receive evidence of the collateral *Page 20 
payments, it obviously did not deduct those payments from the damage award. Thus, the trial judge had the basis for making the post-verdict setoff.
 {¶ 44} In the instant case, Westfield did not submit any jury interrogatories to itemize or clarify the nature of the damages award. The jury instructions permitted the jury to consider all the evidence presented at trial, and it is hornbook law that the jury is presumed to have followed the jury instructions. Sinea v. Denman Tire Corp. (1999),135 Ohio App.3d 44, 64, 732 N.E.2d 1033. Under the two-issue rule, when a jury renders a general verdict in a case involving multiple issues, and when there are no jury interrogatories revealing the basis for the verdict, it is presumed that all disputed issues were resolved in favor of the prevailing party. Sites v. Haverstick (1873), 23 Ohio St. 626;McCarthy v. Kasperak (1981), 3 Ohio App.3d 206, 208, 444 N.E.2d 472. In the instant case, there was a general verdict in favor of Appellants. Westfield attempted to undercut that general verdict by a post-trial motion for setoffs. Westfield did not propose any interrogatories, and in fact, actively opposed Appellants' attempt to add a clarifying jury instruction that would have resolved any confusion as to how the jury was to use the collateral source payments in making its award. Therefore, we must presume that the jury considered the collateral payments and properly deducted them in making its award, and Westfield is not permitted to have those amounts deducted a second time by the trial judge after the jury rendered its verdict. Appellants' first and third assignments of error are, therefore, sustained.
 ASSIGNMENT OF ERROR NO. 2 *Page 21 {¶ 45} "The Trial Court committed reversible error in denying Plaintiffs [sic] Motion for New Trial based upon the jury's failure to include any medical expenses as part of the Plaintiffs [sic] verdicts."
 {¶ 46} Appellants also argue that a new trial should have been granted because the jury was confused about how to handle the collateral source payments from Anthem, and because no damages were awarded for any medical expenses. This assignment is based entirely on the trial itself, without regard to the post-trial motion by Appellee or the trial court's determination on that motion. Under Civ.R. 59(A), a trial court is permitted, but not required, to grant a new trial for a variety of reasons, including irregularity in the proceedings, inadequate damages due to jury prejudice or passion, or errors of law. An appellate court reviews the decision of a trial court in deciding whether to grant a motion for a new trial under an abuse of discretion standard. Rohde v.Farmer (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus.
 {¶ 47} It is clear that a new trial was not warranted in this case. There is an argument to be made under this assignment of error that, if the jury was confused about the collateral source payments, Appellants contributed to this confusion by failing to excise or redact the payments made by Anthem from the medical invoices he submitted as evidence. As earlier stated, Appellants were free to provide the jury with evidence of collateral payments and take the chance as to how these were handled by the jury. That said, Appellants cannot complain about the result. It is also mere speculation by Appellants that no damages were awarded for any medical *Page 22 
expenses. Because the jury rendered a general verdict, there is no means for testing the verdict to determine what amount, if any, was awarded for medical expenses, and what amount was awarded for subjective and less quantifiable damages, such as pain and suffering. As set forth earlier, the jury is presumed to have considered all the relevant evidence and to have followed the instructions provided by the trial court.
 {¶ 48} Appellants attempt to rely on an affidavit from one of the jurors to establish that the jury was confused by the trial court's instructions. This affidavit was attached to the motion for a new trial. The affidavit allegedly proves that the juror could not make any sense out of the medical bills, and that the juror assumed the entire jury award would go to Appellants. As Westfield correctly points out, such affidavits may not be used to impeach a verdict. Evid.R. 606(B) states: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith." The affidavit clearly expresses the mental processes of the juror during deliberations, and cannot be used to impeach the verdict.
 {¶ 49} Furthermore, in order to permit a juror's testimony or affidavit to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves.Wicker v. Cleveland (1948), 150 Ohio St. 434, 38 O.O. 299, *Page 23 83 N.E.2d 56. The information must also be from a source who possesses firsthand knowledge of the improper conduct. State v. Rogers (1990),68 Ohio App.3d 4, 8, 587 N.E.2d 381. The only evidence that Appellants presented to challenge the verdict was an affidavit of one of the jurors, and this type of evidence is insufficient to raise a question about the validity of the verdict. Appellants' second assignment of error is overruled.
 CONCLUSION {¶ 50} In conclusion, the record fails to provide any factual basis for deducting setoffs from the jury verdict when the evidence presented at trial combined with the jury instructions which were presented gave the jury the opportunity to make the proper setoffs as part of its final damages award. The trial court did not instruct the jury to ignore the collateral source payments, and thus, absent affirmative evidence to the contrary we must presume those payments were incorporated into the verdict. The judgment granting Westfield a postverdict setoff is reversed, and the original jury award to Mary Jordan for $12,000 and to Melvina Jordan for $1,700 is reinstated. The trial court's judgment overruling the motion for a new trial is affirmed.
 Vukovich, J., concurs. DeGenaro, P.J., concurs. *Page 1